## Union County v. Isaac L. Axley.

1. Costs—*Matters of Statutory Regulation.*—Costs are purely matters of statutory regulations, and the courts have no power to adjudge them as against any one on mere equitable or moral grounds. The court must look to the statute as its warrant of authority.

2. Insane Persons—*Policy of the State.*—The State as well as the relatives of an insane person, are interested in having insane persons, especially those who manifest homicidal and suicidal tendencies, securely but humanely taken care of, before such manifest tendencies result in the taking of human life.

3. Paupers—*Bringing Same into the State.*—Sec. 13, Ch. 107, R. S., which provides that if any person shall bring or leave any pauper in any county in this State, wherein such pauper is not lawfully settled, knowing him to be a pauper, he shall forfeit and pay the sum of $100, does not prevent a person from bringing his poor and unfortunate relative to his home, from another State, and thus provide for and maintain him at his own expense.

4. Courts—*Duty to Administer the Law.*—While it is the duty of courts to administer the law as written, they should guard, however, as far as possible, by rigid construction and by requirement of ample proof, against an attempt to bring within its provisions, cases which never could have been within the intent of an enlightened legislature.

5. Continuance—*Insufficient Affidavit.*—On the trial of a person for bringing a pauper into this State, a motion for a continuance in order to get a certified copy of an alleged record, to show that the alleged pauper had been convicted of insanity, and that he had been delivered to the defendant before he had been discharged from that judgment, is properly overruled, because the affidavit does not show : 1. A promise on the part of the clerk to send such record. 2. Nor that an effort was made

to secure it through another person. 3. That any fee was tendered for making the same. 4. That it would have been admissible in evidence had it been obtained, for there was no request for its authentication as required by act of Congress.

Memorandum.—Suit for a penalty for bringing a pauper into the State. Appeal from the Circuit Court of Union County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the February term, 1894, and affirmed. Opinion filed June 23, 1894.

The opinion states the case.

A. NEY SESSIONS, state's attorney, for appellant.

P. E. HILEMAN, attorney for appellee.

MR. PRESIDING JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellant brought this suit against appellee to recover the penalty provided by Sec. 13, Chap. 107 of the statutes, which is, "If any person shall bring or *leave* any pauper in any county in this State, wherein such pauper is not lawfully settled, knowing him to be a pauper, he shall forfeit and pay the sum of $100 for any such offense, to be sued for and recovered by and to the use of such county by action of debt, before any justice of the peace in the proper county."

The evidence shows that in the latter part of January, 1893, the appellee, having learned that his brother, Joseph M. Axley, was in jail at Salem, Arkansas, to which State he had gone in 1876, not at the time knowing on what charge his brother was confined, went there and brought him and his family to his, the appellee's house, in Union county, where the Axley family had lived for many years. While there, he learned that his brother was confined for insanity. The brother and his family were provided a home by appellee. The county at no time was solicited to provide for or assist in the support of the brother or any of his family. The brother was able to and did perform the usual labor of a laboring man, as is fully shown by the evidence, until about the first of March, 1893, when he manifested symptoms of

insanity.   On the 15th day of April, thereafter, the appellee, having filed the usual petition in the County Court, alleging such insanity of his brother, a trial was had and Joseph M. Axley was found to be insane and a pauper, whereupon the court entered the following order:   " It is therefore ordered that Isaac L. Axley, the appellee, file bond according to law to trustees of Southern Illinois Hospital for the Insane, in the penal sum of one hundred dollars.   And now comes Isaac L. Axley and presents a bond as aforesaid with John Tripp and Houston Tripp as securities, which bond is approved by the court.   It is further ordered that the clerk of this court transmit a copy of said verdict to the superintendent of said hospital and make application for the admission of said lunatic to the hospital."   After the adjudication of insanity, Joseph M. Axley was kept in the county jail for a short time before being sent to the asylum.

The costs of trial in the County Court was from $15 to $18, and the costs of keeping in the county jail, including fifty cents each for receiving and discharging the insane subject was $1.20, all of which, it is said, was paid by the county.   It vaguely appears from the record that the insane patient was kept at the hospital but for a short time, and then returned to the appellee, who, for aught that appears in the record, still is keeping and providing for him.

After such return, the appellee testified that the county demanded of him that he pay the expenses of the trial for insanity, which it is assumed from the arguments of counsel, he refused to pay, and thereafter, this prosecution was begun for the recovery of the penalty before referred to.

What those costs have to do with this proceeding we are unable to understand.   The jury on the trial for insanity found he was a resident of the County of Union in the State of Illinois, and that he was a pauper.   In such case, Sec. 13, Chap. 85, of statutes, provides " the costs of the proceedings, including the fees of the jury, shall be paid out of the county treasury."

If not a pauper, but found to be insane, the same section provides, " the costs of the proceeding, including the fees of

the jury, shall be paid by the petitioner, and judgment may be awarded against him therefor," or " such costs shall be paid by his guardian, conservator, or relatives, as the court may direct."

In view of the finding of the jury there was no legal claim against appellee for such costs, and the court could not have adjudged that he should pay them. Costs are purely matters of statutory regulation and the courts have no power to adjudge them as against any one on mere equitable or moral grounds. Smith v. McLaughlin, 77 Ill. 596. The court must look to the statute as its warrant of authority. Eimer v. Eimer, 47 Ill. 373; Poppers v. Meager, 33 Ill. App. 20.

It appears, however, as heretofore shown by the order of the County Court, that notwithstanding the finding of the jury that Joseph M. Axley was a pauper, the appellee, Isaac L. Axley, was required to give the statutory bond, provided for by Sec. 15, Chap. 85, in case the person so adjudged insane is not a pauper, conditioned that he would " find said patient in suitable and sufficient clothing while he may remain in said institution, and shall promptly pay for such articles of clothing as it may be necessary to procure for said Joseph M. Axley at the hospital, and shall remove Joseph M. Axley from said hospital when required by the trustees to do so." Whatever may be the legal effect of this bond, in view of the statute, the appellee has shown no disposition to avoid its obligations. Nor is there any proof that he has sought to avoid the obligations imposed on him by sections 1 and 2 of chapter 107 of the statutes, which require him to support his indigent and unfortunate brother. He has done so cheerfully so far as this record discloses. The county has not paid out a cent for his brother's support, nor is there any evidence tending to show it will ever be compelled to do so. The payment of the costs by the county, made on the trial of Joseph M. Axley's sanity, is supposed in some way to have been a payment for his support. This is an erroneous idea. The State, as well as the relatives of the insane person, is interested in having insane persons, especially those

who manifest, as the verdict of the jury found Joseph M.
Axley did, " homicidal and suicidal tendencies " securely, but
humanely taken care of, before such manifest tendencies
result in the taking of human life.   The consensus of opin-
ion is, there is too much laxity and negligence on the part of
relatives in taking care of such persons, and placing them
where they can neither harm themselves nor others.   The
interest of the State is just as great in having such persons
secured as in having criminals secured who have manifested
the same tendency by attempting to take human life, so far
as that purpose of the imprisonment of criminals is con-
cerned.

Therefore, the State has provided that when the insane
person is a pauper, the county shall pay the expenses of the
trial.   The proof of the fact that the county paid such ex-
penses is no evidence, therefore, that the appellee brought
his brother into Union county and *left him on the county for
support*, for that is what Sec. 13, Chap. 107, means.   The
court in its instructions to the jury in this respect, gave an
intelligent and humane interpretation of that statute.   It is
not the law that one brother can not bring another poor
and unfortunate brother to his home, even from another
State, and thus provide for and maintain him at his own
expense.   To hold that he could not do so, would be shock-
ing to the moral sense of mankind.   The law is sufficiently
stringent, if interpreted to mean that one brother or rela-
tive can not do so without subjecting himself to the penalty
therein prescribed, unless he can provide for, support and
maintain such poor or pauper relative.   As is said in the
case of Williams v. Franklin Co., 39 Ill. App. p. 22–23, while
it is the duty of courts to administer the law as written,
they should guard, "however, as far as possible, by a rigid
construction, and by requirement of ample proof, against an
attempt to bring within its provisions, cases which never
could have been within the intent of an enlightened legisla-
ture."

The motion for a continuance, based on the affidavit set
out in the record, was properly overruled.   The purpose of

the continuance was alleged to be in order to get a certified copy of an alleged record, at Salem, Arkansas, showing that Joseph M. Axley was there convicted of insanity, and that he had been delivered to appellee before he had been discharged from that judgment. The affidavit shows this alleged information was obtained on the 3d day of October, 1893, and immediately the clerk of such court was written to, requesting that he send a certified copy of such record " with the fee bill," to the affiant.

This trial did not take place until the 16th day of November thereafter, up to which time, as the affidavit states, the affiant had heard nothing from said clerk in regard to said record. This affidavit does not show : 1. A promise on the part of the clerk to send such record. 2. Nor that an effort was made to secure it through another person. 3. That any fee was tendered for making the same. 4. That it would have been admissible in evidence had it been obtained, for there was no request for its authentication as required by act of Congress. Starr & Curtis, Vol. 1, p. 1094.

Other reasons might be assigned for sustaining the ruling of the court on the motion for a continuance, but these are deemed sufficient. There being no error in the record, the judgment is affirmed.