## Homer K. Galpin, Complainant, v. City of Chicago et al., Defendants. Appeal of John J. Healy.

### Gen. No. 16,014.

1. MUNICIPAL COURT—*status of.* The Municipal Court although limited in its territorial jurisdiction is nevertheless, as are all the courts of the state, a state agency for the administration of justice. It is to a large extent separate and distinct from the other branches of the city government. The Municipal Court is a city court, but it is, in no sense, the city's court.

2. MUNICIPAL COURT—*right of city to fines, etc.* The fact that the legislature has placed the financial burden of the maintenance of the Municipal Court upon the city of Chicago does not confer upon such city the right to reimbursement from fines, penalties and forfeitures imposed by such court.

3. MUNICIPAL COURT—*authority for creation of.* Section 34 of article IV of the State constitution adopted in 1904 as an amendment is not the authority for the creation or establishment of the Municipal Court of Chicago by the General Assembly; the authority for the creation and establishment of such court is section 1 of article IV of such constitution.

4. MUNICIPAL COURT—*section 57 of act of 1907 construed.* Section 57 of the act of 1907 amendatory of the Municipal Court Act does not repeal sections 7 and 8 of the Fees and Salaries Act which pertain to the fees and the lien for fees of the state's attorney.

5. MUNICIPAL COURT—*section 57 of act of 1907 construed.* Section 57 of the act of 1907 does not authorize the taxation of costs where the imposition thereof was not theretofore authorized by law; as, for instance, against the state where a prosecution by it is unsuccessful.

6. MUNICIPAL COURT—*section 57 of act of 1907 construed.* The term "uncollected costs" does not include costs taxed against a defendant bound over to the grand jury if no showing is made that

the costs so taxed have been finally adjudged against such defendant and remain uncollected; neither does such term include costs taxed against the people or against any state or county official prosecuting in his official capacity, as no warrant in law exists for the taxation of costs against them.

7. MUNICIPAL COURT—*section 57 of act of 1907 construed.* The term "uncollected costs" includes only costs collectible by means of legal process, that is to say, costs for which judgment has been rendered but which the proper officer has failed or been unable to collect.

8. MUNICIPAL COURT—*section 57 of act of 1907 construed.* Section 57 of the act of 1907 did not operate to affect the lien of the state's attorney given him by sections 7 and 8 of the Fees and Salaries Act upon all judgments procured by him for fines, penalties and forfeitures.

9. MUNICIPAL COURT—*section 57 of act of 1907 construed.* Section 57 of the act of 1907 insofar as it appropriates to the city for uncollected costs the fines, penalties and forfeitures imposed for violations of state laws, repeals section 1 of the school law within that portion of Cook county wherein the Municipal Court has jurisdiction.

10. CONSTITUTIONAL LAW—*distribution of governmental powers.* The legislature is the sole and exclusive authority for the appropriation of the funds of the state whether such funds arise from fines or forfeitures imposed in its courts upon violators of its laws, from costs paid in civil and criminal cases instituted in these courts, or otherwise; the courts have no power equitably to distribute these funds.

11. CONSTITUTIONAL LAW—*effect of section 34 article IV.* The purpose served by section 34 article IV is to exempt the city of Chicago from the operation of certain provisions of the constitution which require legislative enactments to be general in their operation.

12. STATUTORY LAW—*when repeal by implication does not arise.* A repeal by implication does not arise unless the legislative intent to that effect is clearly indicated.

13. COSTS—*authority for taxation.* The common law does not authorize the taxing or allowance of costs in any case and hence no costs are taxable in our courts unless statutory warrant be found therefor.

14. COSTS—*distinguished from fees.* In the ordinary legal sense "costs are an allowance to a party for expenses incurred in conducting his suit. Fees are compensation to an officer for services rendered in the progress of the case."

15. INTEREST—*right to, arising upon fund in dispute.* If the ownership of a fund of money is in dispute the interest which has accrued upon such fund follows the principal.

Galpin v. City of Chicago, 159 Ill. App. 135.

16.  FEES AND SALARIES—*change in compensation during term of office.*  It is not within the power of the legislature to make a change in the compensation of a state's attorney during his term of office.  If at the time of taking office a state's attorney has a lien upon particular funds for certain of his compensation, it is not within the power of the legislature to remove or postpone that lien during his term of office.

Bill in equity.  Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1909.  Reversed and remanded.  Opinion filed December 2, 1910.

Statement by the Court.  Complainant, Homer K. Galpin, instituted this cause by a bill in equity in the nature of a bill of interpleader which he filed on December 26, 1907.  On June 29, 1909, he filed his second amended and supplemental bill and thereby eliminated an amended and supplemental bill and an amendment to the amended and supplemental bill, both of which had been filed in the meantime.  By the second amended and supplemental bill complainant shows that, during the two years beginning December 3, 1906, and ending December 5, 1908, he had received or collected fines amounting to $106,058.76 as clerk of the Municipal Court of Chicago, in criminal or quasi-criminal cases which had been instituted in that court by authority and in the name of the People of the State of Illinois, or in the name of some state or county officer in his official capacity.  Of these collected fines the bill alleges that there remains in complainant's hands the principal sum of $102,285.25 upon which $3,690.73 interest had been earned, making an aggregate sum of $105,975.98 in complainant's hands.  The bill states that complainant has at all times been willing to pay this money to the person or persons entitled thereto and the offer is made to bring the money into court.

The complainant further shows that in criminal and quasi-criminal cases, prosecuted by authority or in the name of the people or in the name of some state

or county officer in his official capacity, uncollected costs have been earned and have accrued in the Municipal Court as follows: where defendants have been sentenced to imprisonment and incarcerated and judgments rendered against them for costs: clerks' costs $13,114, bailiffs' costs $6,544; where defendants have been sentenced to both imprisonment and fines and judgments have been rendered against them for such fines and costs and the costs have been worked out in the city's house of correction: clerks' costs $9,651, bailiffs' costs $4,991; where fines alone have been imposed and judgments rendered for such fines and costs and the costs have been worked out in the city's house of correction: clerks' costs $1,889.30, bailiffs' costs $1,977.90; where defendants have been acquitted: clerks' costs $72,557, bailiffs' costs $32,238; where in preliminary examinations, defendants have been held to the criminal court and fee bills have been certified to the criminal court by the clerk of the Municipal Court: clerks' costs $53,205, bailiffs' costs $10,833; where, in preliminary examinations, defendants have been discharged: clerks' costs $75,148, bailiffs' costs $10,833; and that these accrued, taxed and uncollected costs aggregate for clerks' costs $225,564.30, and for bailiffs' costs $69,356.90.

Complainant further shows that all of these receipts for fines in criminal and quasi-criminal cases and interest thereupon are claimed by the City of Chicago under section 57 of "An Act to amend an Act entitled 'An Act in relation to a Municipal Court in the City of Chicago,' approved May 18, 1905," which amendatory Act was passed June 3, 1907.

Further, it is shown that John J. Healy claims that complainant is required to pay to him, said Healy, out of said collected fines and interest certain amounts allowed said Healy by the statutes of the state of Illinois for services rendered by him as state's attorney of said Cook county (for his fees in criminal and quasi-criminal cases instituted in the Municipal Court

during said two year period), that is to say, for services as state's attorney in cases as follows: where the defendants were convicted and sentenced to imprisonment and judgments were rendered against them for costs and the defendants have been incarcerated $10,-079; where the defendants were convicted and sentenced to imprisonment and fines and judgments were also rendered against them for costs, and such fines together with the costs have been worked out in the city's house of correction $8,265; where the defendants were convicted and sentenced to payment of fines and judgments were rendered against them for costs and such fines together with the costs have been worked out in the city's house of correction $7,321.55; where, in cases of preliminary examinations in criminal cases, the defendants were held to the criminal court and the fee bills were certified to the criminal court by the clerk of the Municipal Court $17,820; and that these fees claimed for services so rendered by said Healy as state's attorney aggregate the sum of $43,485.55.

Further, it is shown that Augustus F. Nightingale, the County Superintendent of Schools of Cook County aforesaid, claims and demands the above mentioned fines, under section one of article XIV of chapter 122 of the Statutes of Illinois, entitled "An Act to Establish and Maintain a system of free schools" which provides that all fines, penalties and forfeitures imposed or incurred in any court of record or before any justice of the peace, except those incurred or imposed in incorporated towns or cities for violation of their by-laws or ordinances, shall be collected and paid to the county superintendents of schools of the respective counties of the state.

Further it is shown that Charles H. Avery and others, constituting the State Board of Pharmacy, claim a part of said collected fines; that during the two year period aforesaid, under the provisions of "An Act to

regulate the practice of pharmacy in the State of Illinois, to make an appropriation therefor and to repeal certain Acts therein named," approved May 11, 1901, and in force July 1, 1901, complainant collected for penalties imposed the sum of $2,066.50 of which he has paid to said Board $635, leaving in his hands $1,431.50; that said Board now claims said balance under section 15 of said Act; and that for the suits brought under the provisions of said Act there are chargeable as clerks' costs $90 and as bailiffs' costs $36.30, which amounts are uncollected.

Further, it is shown that Charles P. Pruyn and others, constituting the Illinois Board of Dental Examiners, claim a part of said collected fines; that during the two year period aforesaid under the provisions of "An Act to regulate the practice of dental surgery and dentistry in the State of Illinois and to repeal an Act therein named," approved May 18, 1905, and in force July 1, 1905, complainant collected for penalties imposed the sum of $880, which amount is claimed by said Board of Dental Examiners under section 11 of said Act; and that for the suits brought under the provisions of said Act there are chargeable as clerks' costs $24, and as bailiffs' costs $11.90, which amounts are uncollected.

Further, it is shown that the Anti-Cruelty Society claims a part of said collected fines; that during the aforesaid two year period under the provisions of "An Act to provide for the payment of fines paid in money, upon all prosecutions for cruelty to animals or children, to the support of societies for the prevention of cruelty to animals and children, or humane societies," approved June 23, 1885, and in force July 1, 1885, through the agency of said Anti-Cruelty Society fines were imposed by said Municipal Court which were paid in money and were collected by said complainant to the amount of $678; and that for the suits brought under the provisions of said Act there

are chargeable as clerks' costs $222 and as bailiffs' costs $92.50, which amounts are uncollected.

Further, it is shown that A. Bushman, a deputy game warden, claims a part of said collected fines; that, during the aforesaid two year period, under "An Act for the protection of game, wild fowl and birds, and to repeal certain Acts relating thereto," approved April 28, 1903, and in force July 1, 1903, fines were imposed by said Municipal Court and collected by said complainant to the amount of $55 and that one-half thereof is claimed by said Bushman, who filed the complaints in the proceedings wherein the fines were imposed; and that for the suits brought under the provision of said Act there are chargeable as clerks' costs $30, and as bailiffs' costs $12.50 in cases where defendants were acquitted, which amounts remain uncollected.

Further, it is shown that the State Board of Commissioners of Labor claims a part of said collected fines; that during the aforesaid two year period, fines were imposed by said Municipal Court for violations of "An Act relating to employment agencies," approved May 11, 1903, and in force July 1, 1903, and were collected by said complainant to the amount of $686.50, all of which fines are claimed by said Board through William H. Cruden, the Superintendent of the Illinois State Free Employment Office located in the City of Chicago; and that there are chargeable in suits in said court under said Act, in substance, first, where defendants have been convicted and sentenced to imprisonment and judgments for costs rendered against them: for clerks' costs $12, for bailiffs' costs $6 and for state's attorney's fees $10, and, second, where the defendants have been acquitted: for clerks' costs $12 and for bailiffs' costs $6, which amounts remain uncollected.

Further, it is shown that the South Park Commissioners, a municipal corporation, claims a part of said

collected fines; that, in proceedings instituted by said municipal corporation in said court for violations of the ordinances of said municipal corporation, penalties have been imposed which have been collected by complainant, during the aforesaid period, amounting to the sum of $3,293.01; that of these penalties one-half is claimed by the said municipal corporation and the other half by the City of Chicago, and complainant has paid to said municipal corporation $806 thereof; that, further, in proceedings instituted by said municipal corporation in said court for violations of the provisions of an Act known as the Motor Vehicle Law, in force July 1, 1907, penalties were imposed which have been collected by complainant, during the aforesaid period, amounting to the sum of $921, of which amount the complainant has paid said municipal corporation the sum of $55, and said municipal corporation claims the balance amounting to $866 under said Act; and that there are chargeable, in proceedings brought under said last mentioned Act, in said court, by said municipal corporation, where the defendants have been acquitted, for clerks' costs $96 and for bailiffs' costs $40, which amounts remain unpaid.

Further, it is shown that the Commissioners of Lincoln Park, a municipal corporation, claims a part of said collected fines; that in proceedings instituted by said municipal corporation in said court, for violations of the ordinances of said last mentioned municipal corporation, penalties have been imposed which have been collected by complainant, during the aforesaid period, amounting to the sum of $246; that of these penalties one-half is claimed by the said last mentioned municipal corporation and the other half by the City of Chicago, and the complainant, having paid said last mentioned municipal corporation $131 on account of said penalties collected, has made an overpayment of $8; that, further, in proceedings instituted by said

last mentioned municipal corporation in said court for violations of the provisions of said Motor Vehicle Law penalties were imposed which have been collected by complainant, during the aforesaid period, amounting to the sum of $624; and that there are chargeable in proceedings brought by said last mentioned municipal corporation, under said last mentioned Act, in said court, where the defendants have been acquitted, for costs $119, which amount remains unpaid.

Further, it is shown that the West Park Commissioners, a municipal corporation, claims a part of said collected fines; that in proceedings instituted by said municipal corporation in said court, for violations of the ordinances of said last mentioned municipal corporation, penalties have been imposed which have been collected by complainant, during the aforesaid period, amounting to the sum of $231; that of these penalties one-half is claimed by the said last mentioned municipal corporation and the other half by the City of Chicago and, the complainant having paid the said last mentioned municipal corporation $65 thereof, and the said last mentioned municipal corporation now claims the sum of $50.50.

Further, it is shown, generally, without any specification of facts, at least so far as appears from the abstract of record, that complainant, under the provisions of section 223 of the Revised Statutes, has paid to informers one-half of fines imposed and collected upon convictions, amounting to $602.50.

Further, it is shown that complainant has paid to the State Board of Health for fines imposed by said court under "An Act to regulate the practice of medicine in the State of Illinois," approved April 24, 1899, and in force July 1, 1899, the sum of $1,500, which amount has been collected by complainant.

The parties named as making claims in connection with said collected fines are made parties defendant and complainant prays that they may be required to

interplead and that their claims and demands may be settled and adjusted.

No decree of interpleader between the several parties defendant was entered. The several defendants set up their claims in respect to the fund in complainant's hands by their answers to the bill.

By its answer the defendant, City of Chicago, does not controvert any of the allegations of the bill of complaint. The city, however, denies that Healy has any right or interest in or to the fund, on account of fees earned for services as state's attorney, and also denies that Cook county or the Superintendent of Schools in Cook county has any right or interest in the fund. The city claims that the balance of $1,-431.50, which is in complainant's possession and which is claimed by the State Board of Pharmacy, belongs to and should be paid to the City and that from that balance payments should be made not only of uncollected costs in State Board of Pharmacy cases but also of any and all uncollected costs "earned" by the Municipal Court, for which it has rendered judgments which remain unpaid, in other criminal or quasi-criminal cases instituted in the name or by authority of the People of the State of Illinois, or in the name of any state or county officer; and, further, the City claims that the $880 claimed by the State Board of Dental Examiners belong to and should be paid to the City. This sum of $880, it is asserted, should be applied in the like manner and for the same purposes as claimed in the case of the State Board of Pharmacy. The City makes the like claims with reference to the several amounts claimed by the Anti-Cruelty Society, the Deputy Game Warden and the State Board of Commissioners of Labor. The claims by the several Park Commissioners with respect to fines for violations of the park ordinances, as stated in the bill, are not controverted by the City. Neither does the City raise any controversy with respect to fines under the Motor Vehicle Law, except that it as-

serts that payment should be made of all "earned" and uncollected costs in such cases, and that for that purpose any money in the hands of complainant belonging to these Boards respectively should be retained by complainant and paid to the City. The City claims to be entitled to all the money in complainant's hands with the exception of such parts thereof as it admits to be due to the several Boards of Park Commissioners.

By his answer the defendant Healy sets up his own claims but takes no issue upon any of the allegations of the bill. He shows, in a general way, his earnings and collections and how much he paid the Superintendent of Schools. It appears from his answer that for the period commencing March 1, 1906, to and including February 28, 1907, his earnings amounted to $7,140 in cases prosecuted by him in the Municipal Court and that during the same period he received nothing from any case in that court; that for the period commencing March 1, 1907, to and including February 28, 1908, his earnings amounted to $43,230 in cases prosecuted by him in that court and that during the same period he received from such cases $15,159.67, which left a balance of $27,070 due him for his services in that court during that period; that for the period commencing March 1, 1908, to and including the first Monday in December, 1908, his earnings amounted to $11,400 in cases prosecuted by him in that court and that during the same period he received from such cases $9,511, which left a balance of $1,889 due him for his services in that court during that period; that in addition to his aforesaid earnings in that court he is entitled to commissions amounting to $10,228.25 upon fines, penalties and forfeitures collected in that court; and after deducting moneys received by him as aforesaid there is due him for earnings and commissions in that court the amount of $46,327.85, and that, after deducting from his col-

lections the sum of $23,487.57 paid by him to the Superintendent of Schools, there is due him for earnings in all other cases the amount of $5,052.84, making an amount of $51,380.69 due him for his services as state's attorney during said period, and for this amount he claims and asserts that he has a first and prior lien upon the moneys held by the complainant as stated in his bill. He also claims that he is entitled to a *pro rata* share of the interest earned.

By his answer the defendant Superintendent of Schools of Cook County claims that all fines, forfeitures and penalties collected by complainant and in his hands, after the payment of costs, including the fees of the state's attorney of Cook County, are by law required to be paid to him, the County Superintendent of Schools. He calls for strict proof of the allegations of the bill.

The defendant Anti-Cruelty Society, by its answer, sets up that it is a corporation organized under the laws of the State of Illinois and that through its agency there were collected in fines, $678, as alleged by complainant. The Society admits that in proceedings instituted by it there are unpaid costs to the amount of $314.50, which costs have accrued in cases where the defendants were acquitted or where the cases were dismissed or *nolle pros'd,* but denies that these unpaid costs may be withheld from fines collected which should otherwise be paid to the Society. As to the remainder of the fund, aside from said $678, this defendant disclaims any interest.

The Board of Dental Examiners, by its answer, sets up that the collections made for fines imposed in the Municipal Court for violations of the Act regulating dental surgery and dentistry amount to a sum far in excess of $880 and that all proceedings brought under said Act were instituted at the expense of the Board and were prosecuted by the Board's own attorney on its behalf. By this answer it is also asserted that

all fines imposed under said Act in such proceedings should be paid to the Board and a full accounting is asked.

The Illinois State Board of Pharmacy, by its answer, denies that Healy is entitled to any lien on the moneys in the complainant's hands and sets up that all fines imposed under the Pharmacy Act belong to the Board of Pharmacy and should be paid to it, denies that the City of Chicago or the County Superintendent of Schools, under section one of Article XIV of chapter 122 of the statutes of the State of Illinois, have any interest in fines so imposed, calls for strict proof and prays for a decree in its favor for $1,557.50.

The answer of William H. Cruden, on behalf of the State Board of Commissioners of Labor, sets up that, under the "Act relating to employment offices and agencies," during the period in question, fines and penalties were imposed in the Municipal Court and collected by complainant, amounting to $886.50, which should be paid to him for the use of said State Board and denies that either the state's attorney or the City of Chicago has any interest in such fines.

The defendant A. Bushman, by his answer, admits the collection of $55 for fines imposed in said court under the Act for the protection of game, etc., sets up that he is a special deputy game warden, that he caused these fines to be imposed and asserts that under said Act he is entitled to one-half of said $55 and that the other half should be paid to the state for the benefit of the Game Warden Fund. He also denies that any part of the $55 can lawfully be applied to the payment of accrued costs in cases wherein the defendants were acquitted, and prays that a decree be entered in his favor for the $55.

The three defendants, Commissioners of Lincoln Park, South Park Commissioners and West Chicago Park Commissioners, separately answer that they claim one-half of the fines imposed and collected upon judgments for violations of their ordinances and all

of the fines imposed for violations of the Motor Vehicle Act, within their territorial jurisdictions.

The chancellor rendered a decree finding that, besides $3,690.73 of interest earned upon the sum in his hands, complainant had in his hands $102,285.25 received by him as clerk of the Municipal Court of Chicago from the collection of fines in criminal and quasi-criminal cases and proceedings instituted in that court in the name or by the authority of the People of the State of Illinois, or in the name of some state or county officer in his official capacity, but that $2,769.01 of that sum are for fines and penalties imposed and collected in proceedings instituted by the several park commissioners for violations of park ordinances; that $1,-431.50 thereof are for fines imposed and collected in cases brought by the State Board of Pharmacy; that $880 thereof are for fines imposed and collected in cases brought by the Illinois Board of Dental Examiners; that $678 thereof are for fines imposed and collected in cases brought by the Anti-Cruelty Society; that $55 thereof are for fines imposed and collected in cases brought by A. Bushman, a deputy game warden; and that $686.50 thereof are for fines imposed and collected in cases brought by William H. Cruden on behalf of the State Board of Commissioners of Labor. (The item of $2,769.01 is erroneous in amount and does not agree with the findings in paragraphs 11-15, inclusive, of the decree. Apparently it should be $3,-770.01. Besides, the paragraph of the decree referring to the $2,769.01 item, omits from amounts intended to be excepted $1,490 collected for violations of the Motor Vehicle law.)

The decree directs that complainant pay to the three boards of park commissioners, respectively, the one half of the fines imposed and collected upon judgments for violations of their respective ordinances, that the other half of such fines be paid to the city of Chicago and that all of the fines imposed and collected for viola-tions of the Motor Vehicle Law, within the respective

territorial jurisdictions of the Commissioners of Lincoln Park and the South Park Commissioners, be paid to these two boards respectively.

The aggregate of the amounts decreed to be paid to the park commissioners is $2,374.  This amount being deducted from the $102,285.25, leaves a remainder of $99,911.25 of principal, to be disposed of.  This is besides the interest which the principal has earned.  It appears that no fines were collected for violations of the Motor Vehicle Law within the territorial jurisdiction of the West Chicago Park Commissioners.

Costs in park cases, where defendants had been acquitted, were decreed not to be collectible by the city out of this fund.

In so far as the decree directs payments to the three boards of park commissioners, no errors have been argued thereupon.

The interest item of $3,690.72 is decreed to be paid *in toto* to the city.

In connection with disposing of the remainder of $99,911.25 of the principal the decree finds: that, exclusive of cases for violations of the Motor Vehicle Law, in criminal and quasi-criminal cases instituted in the Municipal Court in the name of the People of the State of Illinois, or in the name of some state or county officer in his official capacity, wherein the defendants have been convicted and judgments rendered against them for costs, there are unpaid costs aggregating $38,185.20; that there are costs taxed in the Municipal Court for preliminary examinations in cases where defendants have been held to the criminal court, which costs have been duly certified to the clerk of the Criminal Court by the clerk of the Municipal Court and remain uncollected, aggregating $64,088; that these two items make a total of $102,273.20 which shall be paid to the defendant city of Chicago out of the fund in complainant's hands, after the sums found to be due the three boards of park commissioners had been paid; that no part of said fund in complainant's hands shall

be paid to any defendant other than the city of Chicago and said three boards of park commissioners; and that, as the fund in complainant's hands is insufficient to pay in full the claims of the defendant city of Chicago and said three boards of park commissioners, it is, therefore, decreed that the remainder of $99,911.20 be paid to the city of Chicago, generally, in satisfaction, as far as it will reach, of said two items of costs due to the city.

Further, the court finds and decrees that the fees, commissions and earnings of defendant Healy, as state's attorney, previous to the expiration of his term of office on December 5, 1908, exceeded his receipts by $51,103.79; that he is entitled to receive that amount and that he is entitled to be paid the same out of collected fines, penalties and forfeitures in the hands of complainant, but not, however, until the said three boards of park commissioners and the city of Chicago have been paid, in full, the amounts above found to be due to them respectively.

Further, the court finds and decrees that the "defendants herein," if the funds in complainant's hands had been sufficient, would have been entitled to receive from him the amounts they and each of them were entitled to, as found in the decree, respectively, after the claims of the city of Chicago, the three boards of park commissioners and John J. Healy had been paid in full.

Further, the court finds and determines the amounts of the uncollected costs taxed in proceedings instituted by the State Board of Pharmacy, the Illinois State Board of Dental Examiners, the Anti-Cruelty Society, A. Bushman, deputy game warden, and William H. Cruden on behalf of the State Board of Commissioners of Labor, respectively, wherein the defendants were acquitted, and decrees that the City of Chicago is not entitled to these amounts from the fund in question.

Further, the court finds the amounts taxed up as costs to be $104,795 in criminal and quasi-criminal

cases, wherein the defendants were acquitted, brought in the Municipal Court by the authority or in the name of the People of the State of Illinois or in the name of some state or county officer in his official capacity and finds the amounts taxed up as costs in that court to be $87,871 in preliminary examinations in crimnal cases, wherein the defendants were discharged, in all of which instances of acquittal and discharge the costs remain uncollected, and decrees that the City of Chicago is not entitled to these amounts from the fund in question.

The defendant Healy and other defendants prayed and were allowed separate appeals from the decree. The appeal by Healy is now before us.

The defendant City of Chicago assigns cross-errors because in those cases where defendants were acquitted or discharged the costs taxed in the Municipal Court against the prosecution in criminal and quasi-criminal cases and in preliminary examinations instituted by authority or in the name of the People of the State of Illinois, or in the name of some state or county officer in his official capacity, were not decreed to be paid to the City by the clerk of the court out of money in his hands derived from the fines paid in cases where defendants were convicted.

HARRY A. LEWIS and WILLIAM F. STRUCKMANN, for appellant.

TOLMAN, REDFIELD and SEXTON, CHARLES A. CHURAN and EDWARD J. BRUNDAGE, for appellees; EDWIN H. CASSELS, of counsel.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

The legal difficulties, which presented themselves to the clerk of the Municipal Court and which undoubtedly induced him to file the bill of complaint herein and which are now presented to us, arise entirely from the passage and the language of the Mu-

nicipal Court act. That act was first passed in 1905. It having soon become apparent that as first passed it needed revision, an act amending various sections thereof and adding other sections thereto was passed in 1907 and approved on June third of that year. The act establishes a new court in and for the City of Chicago for the purposes, besides others, of transacting a great part of the judicial business theretofore transacted in the Criminal Court of Cook County, some of the business of other courts of record of that county, and principally, perhaps, all the judicial business theretofore transacted by the justices of the peace and police magistrates in the City of Chicago. The legislature by these two enactments. established a new court or agency of the judicial department of the State. This new court, although limited in its territorial jurisdiction of the City of Chicago, is, nevertheless, as are all the courts of the state, a state agency for the administration of justice. It is, to a large extent, separate and distinct from the other branches of the city government. The Municipal Court is a city court, but it is, in no sense, the city's court. "A state acts by its legislative, its executive or its judicial authorities. It can act in no other way." *Ex Parte* Virginia, 100 U. S. (10 Otto) 339. See also C. B. & Q. R. Co. v. Chicago, 166 U. S. 226, 234. In the exercise of its judicial functions this new court acts as a governmental agency for the state and is as much a state agency as are the several Circuit Courts and the Superior Court of Cook County. The state alone —in no instance a city—is the sovereignty which the several courts within the territorial limits of the state represent in the exercise of their various functions and their powers.

In the arguments before us the status of the Municipal Court appears to be somewhat misapprehended. Particularly does this seem to be so with reference to that court's relation to the executive and legislative branches of the city government of Chi-

cago.  The legislature has required that substantially all the expenses of the court must be borne by the city and the purport of much of the argument on behalf of the city seems to be that because this financial "burden" was placed upon the city some right arose in favor of the city, the legal nature of which is not made clear, to be "reimbursed," that is, to receive sufficient of the moneys from fines, penalties and forfeitures imposed in this new court upon offenders against the law and from costs collected by its clerk in the civil and the criminal cases instituted in the court to reimburse the city for its outlay.  No principle of law is referred to and no authority is cited to the effect that any such right could so arise.  The legislature is the sole and exclusive authority in the distribution of the burdens of government and in the appropriation of funds for the maintenance of necessary courts for the administration of justice in the different parts of the state, and this maintenance is one of the burdens of government.  The legislature is also the sole and exclusive authority for the appropriation of the funds of the state, whether such funds arise from fines and forfeitures imposed in its courts upon violators of its laws, from costs paid in civil and criminal cases instituted in these courts, or otherwise.  The courts have no power equitably to distribute these funds.  The several parties contesting in this litigation are all only different agencies of our state government and wholly subordinate to and dependent upon the legislature not only for their maintenance but for their very existence.  Judicial cognizance cannot be taken of mere equitable claims or rights as between different governmental agencies of the state government in or to the state's funds.  The appropriations made by the legislature to these agencies are final and conclusive, and if there be no appropriation by legislative enactment the principles of equity, applied by the courts, cannot take the place thereof.

It is a fundamental principle of our government

that the governmental powers of the state are divided into three distinct divisions or departments, namely, the legislative, the executive and the judicial. This division is made by article III of our constitution. Cities, in their public capacity, are mere agencies whereby the state may conveniently administer local government. County v. Bloomington, 106 Ill. 209, 214. By means of the agency of cities the state exercises only its executive and its legislative powers. Ordinarily, when a city government is referred to, the authorities only of executive and legislative character, and not the courts held in the city, are meant. Cities exercise the legislative power of the state in the enactment of ordinances and they exercise the executive power of the state in the enforcement, through the mayor and the police, or otherwise, of all state laws and all local laws or ordinances in force within their respective territorial jurisdictions. But it is by means only of its courts that the state exercises its judicial power. A city court, although the limits of its territorial jurisdiction are co-extensive with the limits of the city, like all other courts existing under our constitution, represents the state directly in the exercise of its function and its power. While such court, in a general sense, is a part of the government of the city wherein it sits, it is not so in precisely the same sense as are the executive and legislative agencies of the city government. City courts are a part of the judicial department or branch of the state government and exist by provision of the constitution itself, while the executive and legislative branches of a city government exist without such constitutional provisions, solely by legislative enactment, and exercise power only to the extent delegated to them by the legislature. Judges of the city courts are not city officials in the same sense as are the mayor, the city treasurer and other similar city officers.

Section 34, article IV, of the state constitution, adopted in 1904 as an amendment, is not, as some

appear to suppose, the authority for the creation or establishment of the Municipal Court of Chicago by the General Assembly.  Our Supreme Court, in Harris v. Board, etc., 105 Ill. 445, 450, and on many other occasions, has said that the constitution, in view of section one, article IV thereof, is an instrument of limitation of power in respect to the legislature and not an instrument of grant of power.  The legislature did not need the amendment of the constitution by the adoption of section 34, article IV, in order to have authority to create or establish the Municipal Court of Chicago.  The Municipal Court is a city court, that is, a court created in and for a city.  The judicial powers of the state are wholly distributed by section one of article VI of the constitution.  It was held in Rowe v. Bowen, 28 Ill. 116, 119, that section one of article V of the constitution of 1848 distributed and disposed of *all* of the judical powers of the state and exhausted the subject.  Section one of article VI of our present constitution takes the place of section one of article V of the constitution of 1848 and, so far as now material, is similar to and performs the same office as did the latter section.  In Mascall v. Commissioners etc., 122 Ill. 620, 623, wherein the opinion was rendered since the adoption of the present constitution, our Supreme Court considered section one, with other sections, of article VI of the constitution of 1870 and upon consideration of these sections arrived at the conclusion that *all* the judicial power of the state is vested in the courts.  Section one of article VI of our constitution, in distributing the judicial powers of the state, provides that the same shall be vested in several courts and among these "such courts as may be created by law in and for cities and incorporated towns."  The legislature required no authority other than this to create the Municipal Court of Chicago.  Without an amendment, revoking the inhibition in article VI relative to the distribution of the state's judicial power, the legislature could create no court ex-

cept under that article. The purpose served by section 34, article IV is to exempt the City of Chicago from the operation of certain provisions of the constitution which require legislative enactments to be general in their operation. It was required, in order that the General Assembly should not be inhibited from providing for Chicago a scheme or charter or local municipal government. By the adoption of that section certain previously existing constitutional inhibitions or limitations upon legislative power were to an extent withdrawn. There is no language used in section 34 which expressly authorizes or directs the establishment of the Municipal Court of Chicago; neither is the context nor the language used such as to necessitate the inference that the section is an amendment to section one of article VI, relative to the discrimination of the state's judicial power. True, the section provides that "in case" (that is, *if*) the General Assembly shall create municipal courts in Chicago it may then abolish the offices of justices of peace, police magistrates and constables within the city and also limit the jurisdiction of the justices of the peace in Cook County outside of the city, so that their jurisdiction shall not extend within the city, and that, if municipal courts be established, then the jurisdiction and practice of such courts shall be such as the General Assembly shall prescribe. The part of this provision relative to abolishing certain justices of the peace, relative to the exclusion of the jurisdiction of other justices of the peace and relative to abolishing police magistrates and constables is but the same partial withdrawal above referred to of certain constitutional inhibitions upon the legislative power. That is, the amendment contemplated the substitution of a city court for the justice of the peace system, prevalent within the City of Chicago at the adoption of the amendment. This change, however, did not require that the legislature be authorized to anew distribute among courts the judicial powers of

the state. No new class of courts became necessary. It merely became requisite that there be a withdrawal, as to a small area within the state, that is within a portion of Cook County, of the operation of certain constitutional provisions requiring certain legislative enactments to be general and of uniform operation over the entire state. The subject dealt with by article VI of the constitution, namely the judicial powers of the state, is incidentally affected by said section 34 and impliedly amended, but only so far as absolutely necessary for carrying out the purpose of expressly amending the special subject dealt with by article IV of the constitution. The only change effected in article VI was clearly in respect to a subject matter germane both to that article and to article IV. What we have said, we believe is in perfect harmony with the decision rendered in Chicago v. Reeves, 220 Ill. 274. The provisions in section 34, relative to the jurisdiction and practice of the new city court, gives the legislature no power that it did not already possess, except in so far as those provisions operate to withdraw the constitutional inhibitions mentioned above.

Section 57 of the Act of 1907, relative to the Municipal Court, provides what the costs in that court shall be in criminal cases, quasi-criminal cases, preliminary examinations and in proceedings instituted in the name or by authority of the People of the State of Illinois or in the name of some state or county officer in his official capacity; that in criminal or quasi-criminal cases no costs shall be required in advance but that in case of final judgment against the defendant the court may in its discretion award the costs against him; that in the proceedings for the prevention of crimes, when the complaint is not sustained and the court is of the opinion that the prosecution was commenced maliciously without probable cause, judgment may be given against the complainant for the costs of the prosecution; that in preliminary exam-

inations where the court finds an offense has been committed and that there is probable ground to believe the defendant guilty the clerk shall certify the costs to the criminal court of Cook County to be there charged as part of the costs if the defendant is convicted; that in search warrant proceedings, if it appears there was no probable cause, the court may tax the costs against the complainant; and that in bastardy proceedings the costs shall be taxed against the defendant if judgment is rendered against him, but if he is acquitted then the court may tax the costs against the complaining witness. The section concludes as follows:

"All moneys collected upon judgments of the Municipal Court in the criminal and quasi-criminal cases provided for in this section shall be paid to the clerk, who shall  *  *  *  apply the same, or so much thereof as may be necessary, to the payment of the uncollected costs  *  *  *  in criminal cases, quasi-criminal cases instituted in the Municipal Court in the name of the people or in the name of any state or county officer in his official capacity, and also the uncollected costs  *  *  *  in cases of the sixth class, and pay over the balance, if any, to the officer entitled by law to receive same."

By section 58 provisions are made for costs in quasi-criminal cases instituted in the name of the City of Chicago, by any of its officers and by any park board within the city.

The above quoted paragraph from section 57 relates solely to proceedings and to cases prosecuted by or for and on behalf of the people of the state in the exercise of the police power of the state. The paragraph provides that all money collected upon judgments in such proceedings and cases shall be paid to the clerk, who shall, *at the end of every three months,* apply all, or such portion as may be necessary, of such collected money to the payment of the "uncollected costs" in such proceedings and cases, and the balance, if any, he shall at such stated periods pay over to the officer entitled by law to receive the same. "All

moneys collected upon judgments'' rendered in such cases refers to money collected for fines, penalties and forfeitures and to costs imposed in such people's proceedings and cases.

Section 59 requires the clerk to pay over to the city, monthly all costs collected by him.

Generally stated, the city's position in this case is the broad one that by the enactment of the Municipal Court act sufficient of the fines, penalties and forfeitures to be collected in these the people's proceedings and cases in this new court was appropriated to these ''uncollected costs'' to pay the same; that this appropriation included all the particular fines, penalties and forfeitures which, previous to the enactment of that act had been specifically appropriated for special purposes, as, for instance, to the maintenance of the Board of Pharmacy, the Board of Dental Examiners, humane societies, societies for the prevention of cruelty to children and animals, lodging house inspectors or public informers; and that this enactment operates to displace the liens, given by previous statutes to state's attorneys upon the judgments procured by them to secure the payment of their ''fees and charges.'' In the present appeal we shall, however, only concern ourselves with the question of whether the passage of the act affected the state's attorneys' liens. Whether it affected the specific appropriations to the boards, societies or persons referred to, will be considered in the disposition, by another opinion, of the separate appeals by the State Board of Pharmacy and others which were taken from the same decree. In this appeal the important feature of the city's position is its contention that this appropriation, of sufficient of the collected fines, penalties and forfeitures to pay the ''uncollected costs,'' is entitled to priority of payment out of the fund involved, as was held by the chancellor in the decree rendered. In the brief and argument on behalf of the city it is said: ''Clearly the Mu-

nicipal Court act does not take away the lien of the state's attorney'' and that ''The lien of the state's attorney attaches to the moneys collected upon judgments in criminal and quasi-criminal cases *after* the clerk's and bailiff's costs have been paid.'' The practical result of carrying out that theory in the present case would be that while the state's attorney would not be deprived of the lien he would be deprived of the money.

Neither sections 7 and 8, presently to be quoted, of the chapter of the Revised Statutes entitled Fees and Salaries, by virtue of which Healy claims, nor the aforementioned section 57, by virtue of which the city claims, purports to dispose of all of these fines, penalties and forfeitures to be collected in the people's proceedings and cases in this new court, that is, so far as we can know from the action of the legislature it was not the intent or design of the legislature to appropriate or dispose of all of the state's funds from which appropriation was made by these two enactments. Sections 7 and 8 do not purport to dispose of the whole fund but expressly give a lien thereupon to secure the state's attorneys the receipt of their earnings and section 57 expressly recognizes and contemplates a residuum for it provides that the clerk shall pay over the balance, if any, ''to the officer entitled by law to receive the same.'' Obviously this officer so entitled is the county superintendent of schools for the benefit of the common school fund because by the School Law, section one article XIV, chapter 125 of the Revised Statutes, it is provided that:

''All fines, penalties and forfeitures imposed or incurred in any of the courts of record, or before any justice of the peace of this State, except fines, forfeitures and penalties incurred or imposed in incorporated towns or cities for the violation of the by-laws or ordinances thereof, shall when collected, be paid to the county superintendent of schools of the county wherein said fines, penalties or forfeitures have been imposed or incurred, and the said county superin-

tendent of schools shall give his receipt therefor to the person from whom such fine, forfeiture or penalty was received. The said county superintendent shall annually distribute such fines, penalties or forfeitures in the same manner as the common school fund of the State are distributed.''

So long as neither of the two enactments under which the respective claims are made disposes of the whole of the fund involved, there is no· such conflict or inconsistency between the earlier and the later enactment as will permit the invocation of the doctrine of repeal by implication. Indeed the only occasion apparent for the present controversy was the insufficiency of the fund to satisfy the claims made upon it. It being clear that both enactments must stand it follows, necessarily, that both must stand in their entirety and in their full force and effect.

By its assignment of cross-errors the city claims a sufficient amount of the fund, which had arisen in complainant's hands, from collections of fines, penalties and forfeitures imposed or accrued in those people's cases wherein judgments were rendered against defendants, to pay the city the costs in those other people's criminal and quasi-criminal cases wherein the defendants, upon trial or otherwise, had been acquitted or discharged. The city's contentions are that the language of this new act, relative to costs, requires the charging of costs where the charging of costs was not theretofore permissible, for instance, in criminal or quasi-criminal prosecutions terminated by the discharge or acquittal of the accused in the Municipal Court; and that the term ''uncollected costs,'' used in the quoted paragraph, is sufficiently comprehensive to embrace, besides adjudged costs uncollected from defendants, such items or amounts in cases of discharge or acquittal as go to make up the costs in cases of conviction, so far as accrued. This latter contention is evidently upon the theory that these items or amounts are ''earned'' by the court although

there is no judgment rendered therefor and the same should be paid by some one in order that the court may have credit for such earning. An instance of the application of this theory arises when there has been a preliminary examination in the Municipal Court wherein the defendant has been held to the Criminal Court and the Municipal Court clerk has certified to the clerk of the Criminal Court the items or amounts of the preliminary examination which go to make up the costs, but the defendant is discharged or acquitted in the Criminal Court, and no judgment for costs is ever rendered.

The contention aims at reaching and acquiring for the city a larger portion of the fines, penalties and forfeitures imposed in the Municipal Court and, to the extent the city's portion would be enlarged, the common school fund's portion would be diminished. The change in the law claimed has more aspects and is more radical than would appear upon superficial consideration. These fines, penalties and forfeitures are a source of income of the state and, anticipated or collected, are subject to appropriation, as are all of the state's funds. Under the conditions herein involved, to adopt the city's view would be to hold that by the enactment of this court act the legislature changed the appropriation it had previously made of those fines, penalties and forfeitures which would be affected by the adoption of the city's view. This should not be held without a clear indication that there was such intention by the legislature or any more readily than we would hold a statute repealed by implication.

The people of the State of Illinois cannot be mulcted in costs in their own courts for unsuccessfully prosecuting those charged with crime or the violations of their laws. This is the rule under the constitution, under the statute and upon principle. Neither can costs be imposed against the prosecutor in an unsuccessful prosecution, when the same has been con-

ducted on behalf of the people but in the name of some state or county officer in his official capacity.

The common law does not authorize the taxing or allowance of costs in any case and hence no costs are taxable in our courts unless statutory warrant be found therefor.

"The court must, in taxing and allowing costs, look to the statute as its warrant of authority. While the court of equity has a discretion in awarding costs in chancery cases, it must confine that discretion to the fees allowed by the statute." Constant v. Matteson, 22 Ill. 546, 560.

"Judgements for costs rest upon statutes, and where the legislature has not authorized them they should not be awarded." Dobler v. Village, 174 Ill. 92, 95.

"The general rule is, that statutes which impose costs are to be construed strictly as such statutes are penal in their character and are regarded as creating liabilities which did not exist at common law." Gehrke v. Gehrke, 190 Ill. 166, 170.

"Costs are not given at common law, and are not taxable or recoverable when not awarded by statute." Fish v. Farwell, 33 Ill. App. 242, 244.

"Costs are purely matters of statutory regulation and the courts have no power to adjudge them as against any one on mere *equitable* or *moral* grounds." Union County v. Axley, 53 Ill. App. 670, 673.

The courts cannot merely by inference or implication assume the power and exercise the authority to impose costs against the state. The intention on the part of the state to authorize the imposition of costs or the rendition of judgments for costs against it must be made to appear clearly before courts will impose them. Tucker v. State, 39 Tenn. (2 Head) 555.

The warrant in this state for taxing costs in criminal cases is to be found in section 13 of Division XIV of the Criminal Code, which provides that: "When any person is convicted of an offense under any statute, or at Common Law, the court shall give judgment that the offender pay the costs of the prosecution."

Neither in section 57 nor elsewhere in the Municipal

Court act is any warrant to be found for the imposi tion of costs against the people or against any state or county official, prosecuting in his official capacity.

It is an elementary principle of the common law that without consent previously expressed the sovereign state cannot be sued and that without such consent, it is not amenable to the exercise of the judicial power either of its own courts or of the courts of any other jurisdiction. This principle is stated generally in *In re* City of Mt. Vernon, 147 Ill. 359, 365. Section 26 of Article IV of the constitution provides that the state shall never be made a defendant in any court of law or equity. Section 17 of chapter 33, entitled Costs, of our Revised Statutes provides that in all suits and actions for and on behalf of the people of this state, the governor thereof, for or on behalf of any county therein, or in the name of any person for the use of the people or any county, if the plaintiff suffers a discontinuance or be nonsuited or nonpros'd or verdict pass against such plaintiff, the defendant shall not recover any costs whatever. In Reeside v. Walker, 11 How. (U. S.) 272, 290, it was held that: "The sovereignty of the government not only protects it against suits directly but against judgments even for costs, when it fails in prosecutions," and that: "Such being the settled principle in our system of jurisprudence, it would be derogatory to the courts to allow the principle to be evaded or circumvented." Moore v. People, 37 Ill. App. 641, is a case illustrative of the rule that the state is not amenable to the judicial power in the taxing of costs or the rendition of judgments for costs. In that case Moore, a justice of the peace, being sued by the county superintendent of schools for the recovery of fines, forfeitures and penalties imposed and collected by Moore in suits prosecuted before him in the name of the people of the State of Illinois, sought to set-off fees or costs which he claimed he was entitled to in the like suits wherein the defendants had been discharged.

The court held that no right or authority existed to tax costs against the people, whether a defendant was convicted or discharged; that Moore could have no claim against the people for fees in cases wherein prosecutions instituted in the name of the people failed; and that Moore had no pretense of a legal or valid claim to set-off fees or charges made or claimed by him against fines collected which the statute directed him to turn over to the county superintendent of schools.

This rule that costs cannot be imposed upon the people or the state by judgment is conceded on behalf of the city. But it is argued, nevertheless, that the fees fixed for the Municipal Court's clerk and the Municipal Court's bailiff by said section 57 are in that section called costs and therefore they are costs and, when unpaid, are within the term "uncollected costs," regardless of whether there be a judgment of conviction or not or whether there be a judgment rendered for costs or not, and that under this statute these fees, in all instances when unpaid, must be taken out of the collected fines, penalties and forfeitures, as costs, and paid to the city. In support of this contention counsel adduce authorities holding it to be a well settled rule of law that the state may be made liable to pay costs by statute. Undoubtedly that is the rule, but the question raised by the contention is not thereby disposed of in favor of the city. In the first part of section 57 the amounts of the clerk's and bailiff's fees and other fees which shall go to make up the costs in these people's proceedings and cases are fixed, and, introducing that subject, the language used is "the costs in criminal cases and quasi-criminal cases * * * shall be as follows:" (here follows a schedule, fixing the amounts of clerk's and bailiff's and other fees). The fees or charges of the clerk and bailiff are here called "costs," but by the context of the section it appears that the word "costs" was not invariably used with discrimination.

Later in the section, for instance, it is said "in case judgment is rendered against the defendant, the *costs* shall be taxed against him as a part of the costs in such case." While costs and fees are essentially different, the word "costs" is sometimes used where either the word "fees" or the word "charges" would have been more accurate, as would have been the case in this instance. With reference to preliminary examinations conducted in the Municipal Court, section 57 provides that when defendants are held to the Criminal Court the Municipal Court clerk shall certify the amount of the costs to the Criminal Court to be there taxed against the defendant as a part of the costs in the cause if the defendant is convicted. Numerous cases indicate that there has been a tendency in the profession to confound the two words costs and fees. In the ordinary legal sense, "Costs are an allowance to a party for expenses incurred in conducting his suit: fees are compensation to an officer for services rendered in the progress of the case." Howard, etc. Ass'n. v. Philadelphia, etc. R. R. Co., 102 Pa. St. 220; Tillman v. Wood, 58 Ala. 578.

We do not agree with the contention of the city in regard to the comprehensiveness of the term "uncollected costs." We regard the term to include only costs collectible by means of legal process, that is to say, costs for which judgment has been rendered but which the proper officer has failed or been unable to collect. When a final judgment rendered in a case by the court is of a kind in which the law does not authorize the collection of costs against either party, it must be conceded that it would ordinarily be considered that there would then be no collectible costs in that case. And there being in such case no collectible costs, there would be no costs that in the ordinary use of the term would be called "uncollected costs." It is our opinion that nothing in section 57 justifies a holding that items or amounts, which are in the nature of fees or charges prior to the final judgment in

these people's cases and proceedings, are costs, within the meaning of the word "costs" in the term "uncollected costs," until a judgment has been rendered by the court for costs against some party against whom the law authorizes the rendition of a judgment for costs. Where the law does not provide for a judgment for costs or no judgment for costs is rendered, we can find no warrant for taking any amount from the fund involved herein and thereby diminishing this fund to the detriment of the several governmental agencies or governmental purposes to which the same had previously been appropriated.

In the case at bar the learned chancellor correctly .decreed that where the defendants had been acquitted or discharged the City of Chicago was entitled to receive nothing out of the fund involved, and the city's cross-errors are not well assigned.

The decree finds that in preliminary examinations, wherein defendants had been held to the criminal court, "costs" had been *taxed* and fee bills had been duly certified by the clerk of the Municipal Court to the Criminal Court to the amount of $64,088. In regard to these certified items it is decreed that they are "chargeable by law as costs earned" and that they were uncollected and that the decree requires that this amount be taken from the funds in the hands of the complainant and paid to the city, upon the theory that the items so certified are "uncollected costs." From what we have already said, it follows that this holding was erroneous. We think the word "costs," when used in section 57 in connection with preliminary proceedings in the Municipal Court, where final judgment of conviction is not rendered, is used tentatively or in place of "fees" or "charges." That the items certified would become costs could not be definitely determined until there was a judgment of conviction in the Criminal Court, in which event the judgment would be for costs against the defendant. In case of the acquittal or discharge of the defendant,

there would be no judgment for costs. As we find the record, there is no showing as to what subsequently became of the cases wherein the items were "certified." The record fails to disclose what happened in the cases where the defendants were held to the Criminal Court. For aught that appears, these may still be pending.

Incidentally it may be noted that if the interpretation of the language used in the above quoted paragraph of section 57 claimed by the city were adopted, that is, that the language authorizes, in the absence of any judgment for costs and when judgments of discharge or acquittal of defendants are rendered, the taking from collected fines, penalties and forfeitures certain items on the theory that they are "chargeable by law as costs earned" then, in such case, a statutory rule would thereby be established which would have existence nowhere in the entire state except in that portion of Cook County within the territorial jurisdiction of the Municipal Court.

In the present appeal the contest for priority of payment out of the fund in the hands of complainant is between the city and appellant John J. Healy. After the payments of the claims of the park commissioners, which are not disputed in this appeal, there remains in complainant's hands $99,911.25 of principal, $3,960.73 for interest and such additional interest as may have accrued since the date to which interest was computed. The right to interest in this case follows the ownership of the principal upon which the interest has been earned and the interest should be distributed accordingly from the time it began to accrue. The city's claim, predicated upon the provisions of the above mentioned section 57, is for $64,088 on account of the above mentioned items certified to the Criminal Court by the clerk of the Municipal Court for which there are no judgments, and for $38,185.20, found by the decree to be for uncollected costs in cases where convictions were had in the Municipal

Galpin v. City of Chicago, 159 Ill. App. 135.

Court wherein judgments for costs were rendered against the defendants. These two sums make $102,-273.20, the aggregate of the city's claim. The claim of Healy is that he has a lien on the fund in complainant's hands and that he should be paid out of that fund the sum of $51,103.79, which sum the decree finds to be due him for fees and commissions. The amount of the fund in the hands of the complainant is insufficient to pay both the aggregate of the city's claim and the amount due Healy. Furthermore, other parties defendant claiming various amounts out of the fund, whose claims were denied by the decree, are in this court by separate appeals upon the same record asserting such denials to be erroneous. As to those other defendants, besides denying them relief, the decree found that they were each justly entitled to various amounts, but that the fund in complainant's hands was insufficient to pay all the parties the amounts to which they were respectively entitled. The decree adjudicates and requires that complainant pay to the city $99,911.25, the remainder of principal in his hands and also all interest. As we understand this decree, the court gave to the city a priority of right over all the other claimants to the entire fund arising out of the fines, penalties and forfeitures. We have stated our opinion to be that the city has failed to establish any right whatever in the fund, so far as the above mentioned amount of $64,088 is concerned. But as the record discloses the existence of evidence which will show whether or not the city is entitled to any of its claim for that amount, and, if to any, how much, we shall be obliged to remand the cause for another hearing. As this case, in view of the fact that the amounts found to be due the several claimants aggregate more than the amount of the fund involved, has been heard and argued mainly, if not entirely, upon the question of priority of right in the fund, we have considered that question. This consideration is desirable also in order to avoid an-

other appeal in this same case, as the city may establish a right in a sufficient portion of its claim for $64,088 to require the right of priority to be determined.

Healy's claim is that his statutory lien—securing to him the receipt of his "fees and earnings" for his services as state's attorney—upon judgments for fines and forfeitures, entitles him to be paid first out of the fund involved. Healy's term of office began on the first Monday of December, 1904. Chapter 53 of the Revised Statutes is entitled "Fees and Salaries." Sections 7 and 8 of that chapter became in force July 1, 1872, and they were in force when Healy's term began. Those sections are as follows:

Section 7. "There shall be allowed to the several state's attorneys in this state, for services to be rendered by them, the following fees and salaries to wit: To each state's attorney the sum of $400; which salary shall be paid to them respectively, in quarter-yearly installments, on the warrant of the auditor, out of any money in the treasury not otherwise appropriated: * * * Provided, that the provisions of this act shall not prevent the payment of such additional compensation to the state's attorney of Cook County, out of the treasury of said county, as is or may be provided by law."

Section 8. "State's attorneys shall also be entitled to the following fees: * * *

All the foregoing fees shall be taxed as costs to be collected from the defendant, if possible, upon conviction. * * *

Ten per cent. of all moneys, except revenue, collected by them and paid over to the authorities entitled thereto, which per cent. together with the fees provided for herein that are not collected from the parties tried or examined, shall be paid out of any fines and forfeited recognizances collected by them. State's attorneys shall have a lien for their fees on the judgments for fines and forfeitures procured by them, until such fees and earnings are fully paid."

Section 61 of chapter 53 is also section one of an act entitled "An Act providing for the payment, by

the County of Cook, of further compensation to the judges of the circuit and superior courts and the state's attorney of said county, respectively," which became in force July 1, 1871, and was also in force when Healy's term began. That section is as follows:

"Section 1. That the judges of the circuit and superior courts and the state's attorney of Cook county, shall each be paid, by the said county, in addition to the salaries which may be paid to them from the state treasury, such further compensation as will make their respective salaries amount to the sum of $7,000."

This section one of the act of 1871 was repealed by the passage of an act amendatory of that act. This amendatory act was passed in 1901 and related to the salaries of the judges and the state's attorney of Cook County. This act of 1901 consisted of three sections. It was by that act enacted that the act containing section one last above quoted "be and the same is hereby amended to read as follows:" and thereupon the three sections followed. The first of these sections relates to the salaries of the judges. By the second section the salary of the state's attorney of Cook county was increased to $10,000 per year and it contained a provision that that amount "shall be in full for all services of the state's attorney of Cook county, and all fees as provided by statute and earned by the state's attorney of Cook county, shall be paid into the county treasury of Cook county." As appears from two decisions of our Supreme Court, People v. Olsen, 222 Ill. 117, and Cook County v. Healy, 222 Ill. 310, the second section of the act of 1901, which increased the state's attorney's salary and cut off his fees, was not properly enacted and it was held not to be valid.

In Cook County v. Healy the opinion was rendered October 3d, 1906, and it was therein held that: "The provisions of the salaries of the judges and state's attorney were contained in a single section of the act of 1871, and if this amendatory act of 1901 is valid

with the exception of section 2, there is no act in force under which the state's attorney is entitled to any salary whatever from the county of Cook." In People v. Olsen the opinion was rendered June 14, 1906, and the act of 1901, with the exception of section 2, was thereby held valid.

As a consequence of the enactment of the act of 1901 the aforesaid section one of the act of 1871 was, as already stated, repealed. By reason of the invalidity of that part of the repealing act which fixed a salary for the state's attorney of Cook county, Healy, whose term as state's attorney of that county began in 1906, depended solely upon the general law of the state, namely sections 7 and 8 aforementioned, for his compensation as state's attorney. True, by an act approved May 17, 1907, and in force July 1, 1907, the salary of the state's attorney of Cook county was fixed at $10,000, to be in full payment for his services, but this act was passed after Healy's term of office had begun and could not affect his compensation. A change in his compensation during his term of office was prohibited by two constitutional provisions, viz., first, by section 25 of article VI which is as follows:

"The judges of the superior and circuit courts, and the state's attorney, in said county [Cook], shall receive the same salaries, payable out of the state treasury, as is or may be paid from said treasury to the circuit judges and state's attorneys of the state, and such further compensation, to be paid by the county of Cook, as is or may be provided by law; such compensation shall not be changed during their continuance in office;"
and, second, by section 22 of article IV, which, in part, reads as follows:

"The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: for   *   *   *   creating, increasing or decreasing fees, percentages or allowances of public

officers, during the term for which said officers are elected or appointed. * * *"

The compensation to which Healy was, by law, of right entitled during his term of office was, therefore, $400 per year, to be paid from the state treasury, the specified fees for convictions procured by him and ten per centum upon certain collections. Furthermore, until his "fees and earnings" were fully paid him he had a lien upon all judgments procured by him for fines, penalties and forfeitures. His lien attached immediately upon the rendition of each particular judgment. By the passage of the Municipal Court act in 1905 and of the amendatory act in 1907 the legislature could not lawfully deprive Healy of this lien nor could it thereby change his compensation during his term. We cannot impute to the legislature any intent to do so. Both section 57 of the Municipal Court act and said sections 7 and 8 of the Fees and Salaries act are in the nature of charges or liens upon the fund involved. The earlier act gives the right of priority of payment. Moreover, by the two quoted constitutional provisions Healy's lien and compensation are protected from any action by the legislature which would be a change in his compensation during his term of office. The above quoted part of section 22 of article IV of the constitution prohibited the legislature from passing any local law increasing or decreasing his fees, percentages or allowances during his term. If the hereinbefore quoted portion of section 57 were to be so construed as to operate to change the fees, percentages or allowances of the state's attorney in Cook county, while it does not change the law anywhere else in the state except within that portion of Cook county wherein the Municipal Court has jurisdiction, this quoted portion would clearly be a local, and also a special enactment. It admits of very serious doubt whether this subject as to the state's attorney's fees, is one in respect of which section 34 of article IV of the constitution authorized or contemplated the withdrawal of the constitutional pro-

visions requiring legislative enactments to be general in their operation throughout the state.

We fail to perceive any ground, by reason of the passage of the Municipal Court act and the use of the language contained in section 57 aforesaid, for imputing to the legislature an intent to disturb or subordinate the lien of the state's attorney of Cook county for his fees and earnings, upon judgments procured by him, to the rights claimed by the city in the proceeds of such judgments when collected. It is idle to assert, as do counsel, that his lien is not affected if it be removed from the first proceeds collected upon such judgments and postponed until the city has been paid out of such proceeds some amount to which it may be entitled under section 57₀ aforesaid. So to remove and postpone the lien would be to divert to other purposes particular proceeds previously devoted to the satisfaction of the lien. If the lien of the state's attorney of Cook county in the judgments procured by him were so subordinated, an anomalous condition in the law of Illinois would arise, for in no other county in the state is the state's attorney's lien subordinated to some other claim or right. Our conclusion is that the chancellor erred in decreeing that out of the proceeds realized from the collection of judgments procured by the state's attorney, for fines, penalties and forfeitures, the defendant Healy should not be paid first before any of such proceeds were paid to the city.

As between Healy and claimants, other than the city, to portions of the fund involved, the situation is somewhat different. However, there being a sufficient amount in the fund, above the amount required to pay Healy's claim, to satisfy these other claimants, it is unnecessary for us to determine whether money, collected upon judgments rendered in prosecutions under the several statutes for special purposes, can be taken to pay Healy's fees for convictions in cases not prosecuted under these statutes for special purposes. The questions arising in this respect between

the city and claimants, other than Healy, of interests in the fund are disposed of in the appeal by the Pharmacy Board.

It is to be observed that, in so far as section 57 appropriates to the city, for uncollected costs, the fines, penalties and forfeitures, imposed for violations of state laws, previously devoted to the common school fund, that section repeals section one of the School Law within that portion of Cook county wherein the Municipal Court has jurisdiction. Whether the constitutional amendment, contained in section 34 of article IV, withdraws the restriction against local and special laws so far as to permit such operation of section 57, we think a serious question, which, however, is not ours to determine.

For the errors indicated, the decree, so far as it concerns Healy, is reversed and the cause remanded for proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

Note: Since the above opinion was written the opinion in People v. Cosmopolitan Ins. Co., 246 Ill. 442, has been published. Therein the Supreme Court confirms the views expressed herein as to the source of authority for the establishment of the Municipal Court.