HOMER K. GALPIN *vs.* CITY OF CHICAGO, Appellant.—
   (JOHN J. HEALY *et al.* Appellees.)—Same Appellant
   *vs.* BOARD OF PHARMACY *et al.* Appellees.—Same Ap-
   pellant *vs.* BOARD OF DENTAL EXAMINERS *et al.* Appel-
   lees.—Same Appellant *vs.* ANTI-CRUELTY SOCIETY *et al.*
   Appellees.

*Opinion filed April 19, 1911.*

1. STATUTES—*law does not favor repeal by implication.* The
law does not favor repeal by implication, and unless the earlier
and later statutes are so repugnant that they cannot operate to-
gether both should be treated as being in force.

2. FINES AND PENALTIES—*effect of section 57 of the Municipal
Court act, concerning the disposition of fines and penalties.* Sec-
tion 57 of the Municipal Court act, requiring moneys collected
upon judgments of the municipal court in criminal and *quasi* crimi-
nal cases to be applied to the payment of uncollected costs, did
not repeal the various general State laws concerning the disposi-
tion of fines and penalties nor does it suspend their operation as
to cases brought in the municipal court, but such provision applies
only to that part of the fines, penalties and forfeitures which re-
mains after paying the amounts provided for in the various laws.

3. SAME—*section 57 of the Municipal Court act does not affect
State's attorney's lien for fees.* Section 57 of the Municipal Court
act, requiring moneys collected upon judgments of the municipal
court in criminal or *quasi* criminal cases to be applied to the pay-
ment of uncollected costs, did not affect section 8 of the Fees act,
giving State's attorneys a lien for their fees upon money received
by them in the prosecution of cases as State's attorneys, nor create
an exception to such section as respects criminal and *quasi* crimi-
nal cases in the municipal court.

4. COSTS—*judgments for costs must rest upon the statute.* The
taxing of costs in any case is not authorized by the common law
but depends upon the statute, and unless the legislature has au-
thorized costs they should not be awarded.

5. SAME—*statute does not authorize costs in criminal cases to
be taxed against State.* The authority for taxing costs in criminal
cases is found in section 13 of division 14 of the Criminal Code,
which does not warrant the taxing of costs against the State where
prosecutions of persons for violation of law are unsuccessful.

6. SAME—*what is meant by "uncollected costs," as that term
is used in Municipal Court act.* The term "uncollected costs," as

used in the Municipal Court act with reference to the application of moneys collected upon judgments of the municipal court in criminal and *quasi* criminal cases, means costs for which judgment has been rendered but which the proper officer has been unable to collect, and does not include costs which have accrued in unsuccessful prosecutions.

7. SAME—*rule as to costs of preliminary examination in the municipal court.* Whether the costs attending the preliminary examination in the municipal court of persons bound over to the criminal court can rightfully be included within the term "uncollected costs," as used in the Municipal Court act, depends upon whether such person is convicted in the criminal court, as there can be no judgment for costs if he is discharged or acquitted.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORÉ, Judge, presiding.

EDWARD J. BRUNDAGE, Corporation Counsel, (EDWIN H. CASSELS, of counsel,) for appellant.

GUSTAVUS J. TATGE, County Attorney, and WILLIAM F. STRUCKMANN, for appellee Healy; E. I. FRANKHAUSER, for Board of Pharmacy; V. A. WRIGHT, for Board of Dental Examiners; LUTHER JOHNS, and CHARLES H. WOOD, (BOWEN W. SCHUMACHER, of counsel,) for Anti-Cruelty Society; CHARLES A. CHURAN, for Commissioners of Lincoln Park; TOLMAN, REDFIELD & SEXTON, for South Park Commissioners.

Per CURIAM: This is an appeal by the city of Chicago from the judgment of the Appellate Court for the First District reversing the decree of the circuit court of Cook county in four cases instituted by Homer K. Galpin, as clerk of the municipal court of Chicago. A certificate of importance was granted by the Appellate Court in each of these cases and the four were consolidated as one case in this court.

The complainant, Galpin, filed his bill of interpleader December 26, 1907, and on March 15, 1909, and June 29 of the same year filed amended and supplemental bills, naming as defendants the city of Chicago, John J. Healy, State's attorney of Cook county, A. F. Nightingale, superintendent of schools of Cook county, the county of Cook, the Illinois State Board of Pharmacy, the Illinois State Board of Dental Examiners, the Anti-Cruelty Society, William H. Cruden, superintendent of the Illinois free employment office, A. Bushman, game warden, the South Park Commissioners, the Commissioners of Lincoln Park and the West Chicago Park Commissioners. He offered to pay into court for distribution among the defendants, as the court might decree, the sum of $105,975.98 in his hands as clerk of the municipal court, of which sum $99,516.24 had been collected from persons convicted in the municipal court for violations of criminal and *quasi* criminal statutes of the State, $2769.01 from fines for violations of various park ordinances and $3690.73 from accrued interest on bank balances of said clerk of the municipal court. These sums had been collected by him during the period beginning December 3, 1906, and ending December 5, 1908. Each of defendants (except Cook county, which filed a disclaimer,) claimed a part of the fund. The decree of the circuit court directed distribution as follows:

"To the boards of park commissioners all fines for violations of the Motor Vehicle law and one-half the fines for violations of park ordinances:

| | |
|---|---:|
| South Park Commissioners | $1,706.50 |
| Commissioners of Lincoln Park | 616.00 |
| West Chicago Park Commissioners | 51.50 |
| City of Chicago, of the principal | 99,911.25 |
| City of Chicago, interest (all) | 3,690.73 |
| | $105,975.98" |

The Appellate Court consolidated the cases for hearing, reversed the findings of the circuit court and ordered the fund distributed as follows:

| | |
|---|---:|
| John J. Healy, State's attorney | $51,103.79 |
| State Board of Pharmacy | 1,431.50 |
| State Board of Dental Examiners | 880.00 |
| Anti-Cruelty Society | 678.00 |
| South Park Commissioners | 1,706.50 |
| Commissioners of Lincoln Park | 616.00 |
| West Chicago Park Commissioners | 51.50 |
| City of Chicago | 38,185.20 |
| Other defendants, city of Chicago (on accounting to determine how many convictions were had of persons bound over on preliminary examinations) and (in case of balance) superintendent of schools | 7,632.76 |
| | $102,285.25 |
| Interest to be divided in parts proportionately the same as the principal | 3,690.73 |
| | $105,975.98 |

The chief point of contention between the parties is as to the construction and effect of sections 57 and 58 of the Municipal Court act. Those sections as first enacted, July 1, 1905, differed somewhat from their present wording as amended in 1907, but on the questions here raised we are of the opinion the amendment made no material changes and we shall therefore only refer to the law as it now stands. Those sections now read, in part, as follows:

"Sec. 57. That the costs in criminal cases and in *quasi* criminal cases and proceedings in the municipal court instituted in the name or by the authority of the people or in the name of any State or county officer in his official capacity, and the costs in cases of the sixth class, to-wit, proceedings for the prevention of the commission of crimes, proceedings for the arrest, examination, commitment and bail of persons charged with criminal offenses, proceedings pertaining to searches and seizures of personal property by means of search warrants, and in bastardy cases, shall be as follows: * * * All moneys collected upon judgments of the municipal court in the criminal and *quasi* criminal cases provided for in this section shall be paid to the clerk, who shall, at the end of every three months,

apply the same, or so much thereof as may be necessary to the payment of the uncollected costs, witness' fees and mileage excepted, in criminal cases, *quasi* criminal cases instituted in the municipal court in the name of the people, or in the name of any State or county officer in his official capacity, and also the uncollected costs, witness' fees and mileage excepted, in cases of the sixth class, and pay over the balance, if any, to the officer entitled by law to receive the same.

"Sec. 58. That the costs in *quasi* criminal cases in the municipal court instituted in the name of the city of Chicago or in the name of any officer thereof in his official capacity or in the name of any municipal corporation, or any board of public park commissioners situated in whole or in part within the city of Chicago, shall be as follows: * * * All moneys collected upon judgments of the municipal court in cases included within this section shall be paid to the clerk, who shall, on or before the tenth day of the following month, pay over to the city of Chicago all moneys so collected upon judgments in its favor. All moneys collected upon judgments of the municipal court in cases for the violation of any ordinance, other than an ordinance of the city of Chicago, shall be paid to the clerk, who shall, on or before the tenth day of the following month pay over the same as follows: All the costs and one-half of all fines and penalties to the city of Chicago and one-half of the fines and penalties to the other municipal corporation or board of public park commissioners, situated in whole or in part within the limits of the city of Chicago, in whose favor such judgment shall have been entered." (Hurd's Stat. 1908, p. 689.)

The circuit court found that $2374 should be first taken out of this fund and paid to the three boards of park commissioners. This is one-half of the fines collected for the violation of park ordinances and the whole of the fines collected for violations, in park districts, of the State Motor

Vehicle law. This holding, as applying to penalties and fines under park ordinances, was based, we assume, on the provisions of said section 58 just quoted, and as applying to fines for the violation of the Motor Vehicle law was based on the provisions of section 19 of said law in force July 1, 1907. (Laws of 1907, p. 516.) The Appellate Court affirmed this part of the decree and there is no dispute on this record as to its correctness. Counsel for the city concede that the Motor Vehicle law having been enacted at the same time as the amendment to said sections 57 and 58 of the Municipal Court act, the legislature did not intend said sections of the Municipal Court act to practically repeal section 19 of the Motor Vehicle law as to the application of fines.

In order to understand clearly the contention of the parties it is necessary to refer to certain other statutes controlling and affecting fees, fines and penalties.

Section 8 of the Fees act, as amended by act in force July 1, 1907, provides: "State's attorneys shall have a lien for their fees on moneys except revenue received by them until such fees and earnings are fully paid." (Hurd's Stat. 1908, p. 1074.) Prior to 1907 the statute only provided for the lien of the State's attorney on the judgments for fines and forfeitures procured by him.

The claim of the superintendent of schools to a part of this fund is based on the provisions of sections 1, 2 and 3 of article 14 of the School law, approved and in force as amended May 21, 1889. He concedes the State's attorney's prior claim. Section 1 reads: "All fines, penalties and forfeitures imposed or incurred in any of the courts of record, or before any justice of the peace of this State, except fines, forfeitures and penalties incurred or imposed in incorporated towns or cities for the violation of the by-laws or ordinances thereof, shall when collected, be paid to the county superintendent of schools of the county wherein such fines, penalties or forfeitures have been imposed or

incurred, and said county superintendent of schools shall give his receipt therefor to the person from whom such fine, forfeiture or penalty was received. The said county superintendent shall annually distribute such fines, penalties or forfeitures in the same manner as the common school funds of the State are distributed." (Hurd's Stat. 1908, p. 1956.)

The claim of the Illinois State Board of Pharmacy is based on the provision of section 15 of the Pharmacy act enacted July 1, 1909, which provides, among other things, that "all penalties collected under the provisions of this act shall inure to the board of pharmacy." (Hurd's Stat. 1908, p. 1414.)

The Illinois State Board of Dental Examiners claims under the provisions of section 11 of the Dental act in force July 1, 1905, which provides that "all fines imposed and collected under this act shall be paid to the Illinois State Board of Dental Examiners for its use." (Hurd's Stat. 1908, p. 1417.)

The Anti-Cruelty Society bases its claim on provisions of sections 1 and 2 of the act which became a law July 1, 1885. Said sections provide, among other things, that all fines paid in money under the State laws in certain cases "shall, when collected, be paid into the treasury of such society, to be applied towards its support," and that all fines, in certain cases, collected under the laws or ordinances of a city, town or village "may, when collected, be paid into the treasury of such society." (Hurd's Stat. 1908, p. 792.)

The Free Employment act, which became a law May 11, 1903, provides that "all money or moneys received from fees and fines shall be held by the said commissioners of labor, and shall constitute a fund for the purpose of enforcing the provisions of this act; and the said commissioners shall, at the end of each fiscal year, make an account of said fund and pay into the State treasury whatever balance shall remain after paying the necessary disbursements

for the purpose of enforcing the provisions of this act." (Hurd's Stat. 1908, p. 1044.)

Section 27 of the Game law, as amended and in force July 1, 1903, provides, among other things, that "one-half of the amount recovered" thereunder is to be "paid to the person filing the complaint in such action and the remaining one-half to the game protection fund." (Hurd's Stat. 1908, p. 1148.)

The argument of counsel for the city of Chicago in effect is, that all of these acts as to the fees and penalties affecting the State's attorney, State Board of Pharmacy, Anti-Cruelty Society, free employment agency and the authorities charged with enforcing the Game law having been passed previous to the Municipal Court act in 1905, were modified when the fees and penalties under those acts were sued for and collected under the Municipal Court act of the city of Chicago, and that the Municipal Court law being, in effect, special or local, would also take precedence of the Dental act, which went into force the same day as the original Municipal Court act. In other words, the city contends that under the provisions of said section 57 of the Municipal Court act the uncollected costs must first be paid out of the funds derived from penalties and forfeitures collected in various cases in that court, which previous to the enactment of the Municipal Court law had been paid over to the board of pharmacy, the dental examiners, the park commissioners, the Anti-Cruelty Society, lodging house inspectors and public informers, and that this enactment also operates to prevent the lien of the State's attorney attaching to any of this money in the hands of the municipal court clerk, except the balance which remains after all of these uncollected costs have been taken out. The city concedes that in all courts other than the municipal court of Chicago, including the other courts in Cook county, if these actions were brought under any of these State laws, the

penalties, fines and forfeitures would be paid to the proper officers, as contended for by appellees in this case.

It is contended by counsel for appellees herein, that if the construction be placed upon section 57 of the Municipal Court act as contended for by the city it would practically repeal the provisions of the other laws here under discus-·sion so far as they apply here, and would therefore be unconstitutional, as special legislation. This argument is not without force, but in view of the conclusions we have reached on the questions here involved we do not deem it necessary to consider or discuss this point.

It is argued at length whether, under the Municipal Court act of Chicago, that court is in every sense intended to be a part of the municipal government of Chicago and not in any sense a part of the judicial system of the State at large. We have had occasion to discuss various phases of this question in *City of Chicago* v. *Reeves,* 220 Ill. 274, *Miller* v. *People,* 230 id. 65, *City of Chicago* v. *Knobel,* 232 id. 112, *Clowry* v. *Holmes,* 238 id. 577, *Hosking* v. *Southern Pacific Co.* 243 id. 320, *People* v. *Olson,* 245 id. 288, *People* v. *Hibernian Banking Ass'n,* 245 id. 522, and *People* v. *Cosmopolitan Fire Ins. Co.* 246 id. 442. We do not consider it necessary here to add anything to what has been said in those cases on this question. It is conceded that by proper legislation all of the provisions as to fines, penalties, fees and forfeitures could be modified or entirely repealed. The only bearing that the character of the court and its powers could have upon this subject would be to throw light on the legislative intention as to the proper construction and effect of said section 57.

Counsel for the city disclaim any intention of contend-·ing that any of the sections of the State laws involved are repealed by said sections of the Municipal Court act, but they argue that the provisions of said Court act on this question of fines and fees take precedence of or supersede these other acts when cases thereunder are brought in the

municipal court of Chicago. It would, indeed, be a strange and extraordinary construction of these laws to hold that section 57 of the Municipal Court act should have the effect contended for by counsel for the city. Such a construction would be most unreasonable and should be avoided if section 57 can be reasonably construed otherwise. These various laws here involved are general in nature and of uniform operation throughout the entire State. The legislature knew this when they passed the Municipal Court act. We think it must either be held that section 57 of the Municipal Court act repealed these earlier acts or did not affect them at all. The law does not favor repeal by implication. Both statutes remain in force unless they are so repugnant that they cannot operate together. (*People* v. *Raymond*, 186 Ill. 407.) The legislature did not intend by the language of section 57 to cause any such radical change in the law as would impair or effectually destroy the enforcement of these State laws within the city of Chicago. All inconsistency between the provisions of section 57 and the other enactments can be obviated by construing the provisions of said section 57 in question as applying to that part of the fines, penalties and forfeitures which remains after the payment of the amounts provided for in the various laws.

This general discussion disposes of the argument of counsel for the city with reference to the funds that should go to the State Board of Pharmacy, the State Board of Dental Examiners, the Anti-Cruelty Society, the superintendent of the free employment agency and the game warden. In this connection, however, it is proper to say that the Dental act having become a law on the same day as the Municipal Court act, the two must be construed as one, and that there is therefore an added reason why section 57 should not be construed as contended by counsel for the city. It may be added, also, that the position of counsel for the city on this point seems hardly consistent with their

admission that the Motor Vehicle law, which went into effect the same day as the amendment to said section 57, was not superseded by provisions of the Municipal Court act.

The conclusions heretofore reached practically cover the argument of counsel with reference to the lien of the State's attorney's fees. There are, however, some questions that are discussed in connection with those fees which introduce principles other than those already discussed, and we shall therefore consider more in detail the acts relating to that portion of the fund.

The State's attorney, at the time this money was paid to the clerk of the municipal court, was entitled, under the law, to all of the fees collected and earned by him in the prosecution of cases. (*Cook County* v. *Healy,* 222 Ill. 310.) Since that decision the State's attorney of Cook county has been placed on a salary of $10,000 a year, (Hurd's Stat. 1909, p. 1160,) to be paid out of the county treasury, and is no longer entitled to such fees. It seems to be argued that the amendment of the law by which the State's attorney was given a lien on moneys received by him instead of on the judgments procured by him, affects the question as to the proper construction of section 57 of the Municipal Court act. We cannot agree with this contention. What we have already said as to the legislative intention in passing section 57 applies with equal force as to this argument, for in all courts of the State, except the municipal court of Chicago, the State's attorney would have a lien on moneys, as contended here by the State's attorney. The legislature, in our judgment, did not intend to make this exception as to the lien of the State's attorney, for his fees, on moneys collected in the municipal court. The reasoning of this court in discussing the rights of the State's attorney under the law as it originally stood, in *People* v. *Nedrow,* 122 Ill. 363, is practically conclusive as to the lien of the State's attorney on the moneys here in question, and tends strongly to uphold the conclusions heretofore stated

by us as to the proper construction of said section 57 of the Municipal Court act.

That part of said section 57 which provides that the clerk shall "pay over the balance of fees to the officer entitled by law to receive the same," requires that the balance, if any, left after paying these various amounts shall be paid over to the county superintendent of schools. As the Appellate Court held that the county superintendent of schools should receive a part of this fund, this court is required to discuss another question raised as to the proper construction of said section 57 of the Municipal Court act.

Counsel for the city contend that in addition to (1) costs in criminal and *quasi* criminal cases (except under the Motor Vehicle law) instituted in the municipal court in the name of the people or of some State or county officer in his official capacity, wherein the defendants have been convicted and judgment rendered against them, (aggregating something more than $38,000,) there are (2) uncollected costs taxed in the municipal court in preliminary examinations in criminal cases where the defendants have been held to the criminal court and fee bills duly certified to the clerk of that court by the clerk of the municipal court amounting to about $64,000, and that there is also (3) a large amount of "costs," as that term is used in said Municipal Court act, which should be paid out of this fund in cases where defendants have been discharged on preliminary examination or acquitted after trial in the municipal court. The trial court held that this third mentioned item was not properly included in the word "costs" as that word is used in the Municipal Court act, and the Appellate Court agreed with that holding. The trial court also held that the second item was properly included. The Appellate Court held that no part of that item was properly included as costs except in cases where judgment was finally entered against the defendant in the criminal court. Both the Appellate

Court and the circuit court held that the first item was properly termed "costs."

The common law does not authorize taxing or allowing costs in any case, and hence in this State judgments for costs must rest upon statutes. Where the legislature has not authorized them they should not be awarded. It is also the general rule that statutes which impose costs are to be strictly construed. (*Dobler* v. *Village of Warren,* 174 Ill. 92; *Gehrke* v. *Gehrke,* 190 id. 166.) The courts can not, merely by inference and implication, assume the power and exercise the authority to impose costs against the State. (*Tucker* v. *State,* 39 Tenn. 555.) The authority in this State for taxing costs in criminal cases is found in section 13 of division 14 of the Criminal Code, where it is provided that when a person is convicted of an offense the court shall give judgment that the offender shall pay the costs of the prosecution. No warrant is found in the Municipal Court act, or in any statute in this State, for the imposition of costs against the public or a public official prosecuting in his official capacity. "The sovereignty of the government not only protects it against suits directly, but against judgments even for costs, when it fails in prosecutions." (*Reeside* v. *Walker,* 11 How. 272.) Clearly, the people of the State cannot be charged costs in their own courts for unsuccessfully prosecuting those charged with crime or the violation of the laws. Beyond doubt, all the amounts in this third item could be properly called "costs" if the legislature in terms so provided, but we do not think the Municipal Court act so provides. The city contends these various costs are not charged against the State or public officials. In effect, however, the amounts that would otherwise go to some of the public authorities would be taken from these funds if all those items, as contended for by the city, were included as costs. The residue, if any, that would go to the school fund would always to that extent be decreased. Manifestly, when a prisoner was dis-

charged in the municipal court it was not intended to include as uncollected costs the fees and charges of the clerk and bailiff. The phrase "uncollected costs," as used here, was intended to include only costs collectible by means of legal process,—that is, costs for which judgment had been rendered but which the proper officer had been unable to collect. Where the law does not provide for a judgment for costs and no judgment therefor is rendered, we are of the opinion that the statute was not intended to authorize the taking of any amount from the fund involved herein, thereby diminishing it to the detriment of the several governmental agencies or governmental purposes to which it might otherwise be applied. Whether the charges of this kind in preliminary examinations that have been certified by the clerk of the municipal court to the clerk of the criminal court would ultimately be properly classed as uncollected costs could not be determined until there was a judgment of conviction in the criminal court, when there would also be a judgment for costs against the defendant. When the defendant was discharged or acquitted there would be no such judgment. The record does not disclose what became of the cases that were certified to the criminal court. For aught that appears they may still be pending or the prisoners may have been acquitted or discharged.

The judgment of the Appellate Court on these matters, including the finding on interest, is in accordance with the law. The State's attorney, the State Board of Pharmacy, the State Board of Dental Examiners, the Anti-Cruelty Society, the game warden and the commissioners of the various parks were all entitled to the full amount of the fees claimed by them. The city of Chicago is also entitled to uncollected costs under the first item above mentioned, of cases of conviction in the municipal court. Whether the city is entitled to anything on the second item will depend upon the disposition of the cases in which the defendants were bound over to the criminal court.

In view of the conclusions that we have reached we find it unnecessary to decide as to the prior rights between the claims of the State's attorney, the board of pharmacy and the other State agencies.

The judgment of the Appellate Court is affirmed in each of the four cases.

*Judgments affirmed.*