THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EARNEST LLOYD NICHOLLS, Defendant-Appellant.

Fifth District   No. 73-47

Supplemental opinion filed January 27, 1977.[1]

---

[1] The original opinion was filed November 14, 1975, and appears at 33 Ill. App. 3d 650.

James R. Streicker and Victoria J. Meyers, both of State Appellate Defender's Office, of Chicago, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

## SUPPLEMENTAL OPINION ON PETITION FOR ATTORNEYS' FEES

Mr. JUSTICE JONES delivered the opinion of the court:

This supplemental opinion is responsive to a motion filed by the People to assess costs of appeal and fees against defendant. A similar motion has been filed in 27 other cases heard on appeal in this court and all motions have been consolidated for hearing and disposition. In this and other cases objections to the assessment of costs and fees have been filed on behalf of all indigent defendants and briefs have been filed by the parties on both sides.

The People contend that the statutes authorize the assessment and collection of costs of appeal and fees in the appellate court and that recourse may be had for satisfaction of costs of appeal from any bail money posted by a defendant with the appellate court clerk.

The position advanced on behalf of the indigent defendants is that the statutes do not authorize the appellate court to assess costs of an appeal and fees against a defendant and, alternatively, that in any event the appellate court is without authority to assess costs or fees against a defendant in a criminal case after the mandate has been issued. The defendants who are indigent further contend that because of their indigency assessment of costs and fees against them is never proper.

Although there is no single comprehensive statute dealing with the assessment and collection of costs and fees in the appellate court, there is, nevertheless, a comprehensive scheme which emerges upon consideration of the scattered, though applicable, statutes, rules and interpretative cases.

■■ The assessment or taxation of costs is the process of ascertaining and charging up the amount of costs to which a party is legally entitled or which are legally chargeable. The matter of assessing or taxing costs is governed by statute since no costs were taxable at the common law. (*Meyer v. Marshall* (1976), 62 Ill. 2d 435, 343 N.E.2d 479; *People ex rel. Stuckart v. Campbell* (1917), 204 Ill. App. 226.) The taxation or assessment of costs is a ministerial function of the clerk of the court who may only tax such costs as the statute may provide or what within its discretionary power the court may direct. (*Rimmer v. O'Brien-Green Co.* (1896), 64 Ill. App. 104; *Schmidt v. Johnson* (1922), 224 Ill. App. 291.) Assessment by the court of costs or fees not authorized by statute is an abuse of discretion. *People v. Parks* (1920), 216 Ill. App. 529.

■■■ Initially, we note that section 25 of "An Act to revise the law in relation to costs" (Ill. Rev. Stat. 1975, ch. 33, par. 25) provides:

"The clerk of *any court* in this state is hereby authorized and required to tax and subscribe all bills of costs arising in any cause

or proceeding instituted in which he is clerk, agreeably to the rates which shall, for the time being, be allowed or specified by law; and shall in no case allow any item or charge unless he shall be satisfied that the service for which it was made was actually performed in the cause." (Emphasis supplied.)

We harbor no doubt that this statute is a command to clerks of the appellate courts as well as to clerks of the circuit courts. The use of the term "any court" permits no doubt. By statute, costs and fees accrue in appellate courts as well as in trial courts and, as will be seen, costs and fees assessed in appellate courts are subject to the same methods of collection and enforcement as costs and fees accruing in the circuit courts. Note that under the above statute the clerk is not to allow for any item or charge unless he shall be satisfied that the service for which it was made was actually performed in the cause. This is a plain indication that costs and fees incurred in one court cannot be taxed or assessed and collected in another court; no clerk can know what services were actually performed or fee incurred except those performed or incurred in the court which he serves. In *Crum v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1918), 212 Ill. App. 518, 519, the court stated:

"At the common law there was no such thing as a judgment for costs. Under our practice a judgment for costs can only be entered when the same is authorized by statute or by the agreement of the parties. *There is no statute authorizing a trial court to tax as costs in that court, costs that are made in the Appellate or Supreme Court.*" (Emphasis supplied.)

Thus, it cannot be contended that the costs and fees which accrue and are assessed by the appellate court are to be referred to and collected by process out of the circuit court. Such procedure is not provided by statute. Furthermore, in view of the plenary powers for collection of costs and fees conferred upon the appellate courts, such procedure is unnecessary.

Upon assessment of the appropriate costs and fees in accordance with the applicable statutes, they become due and payable to the clerk of the appellate court and judgment is rendered. Section 13 of division XIV of the Criminal Code of 1874 (Ill. Rev. Stat. 1975, ch. 38, par. 180—3) provides:

"When any person is convicted of an offense under any statute, or at common law, the court shall give judgment that the offender pay the costs of the prosecution."

■■ The assessment and imposition of costs under this statute is mandatory and may not be waived as an exercise of judicial discretion. (*People v. Harris* (1968), 97 Ill. App. 2d 288, 240 N.E.2d 123, *cert. denied*, 395 U.S. 985, 23 L. Ed. 2d 774, 89 S. Ct. 2137; *People v. Barringer* (1974),

22 Ill. App. 3d 168, 317 N.E.2d 331.) Furthermore, section 13 of division XIV of the Criminal Code of 1874, which directs the court to enter judgment for costs upon a conviction, uses the imperative "shall." In construing statutes, courts have generally held that the word "shall" is mandatory, particularly when the word is addressed to a public official. (*People v. Liddell* (1974), 19 Ill. App. 3d 794, 313 N.E.2d 248.) It is to be noted that the statute provides that costs can be taxed only upon conviction. Acquitted defendants sustain no liability for costs. *Wells v. McCullock* (1852), 13 Ill. 606; *Heist v. People* (1894), 56 Ill. App. 391.

It is readily apparent that section 13 of division XIV of the Criminal Code of 1874 applies to appellate courts as well as to trial courts. Section 22 of "An Act to revise the law in relation to costs" (Ill. Rev. Stat. 1975, ch. 33, par. 22) relates to taxation of costs upon affirmance or reversal of judgment on appeal, providing:

> "If any person shall take an appeal, to review the judgment of any other court, and the same judgment be affirmed or the appellant be non-suited, the appellee shall recover his costs, and have execution therefor; and if the judgment be reversed, the appellant shall recover his costs, and shall have execution therefor, as in other cases."

It is to be noted that no distinction is made in this statute between civil or criminal cases. Section 3 of "An Act to establish appellate courts" (Ill. Rev. Stat. 1975, ch. 37, par. 27) provides, in pertinent part, that clerks of appellate courts shall be entitled to receive the same fees for services in the appellate court as are allowed for like services in the supreme court. Fees of the clerk of the supreme court, applicable also to the clerk of the appellate court, are fixed in section 12 of "An Act concerning fees and salaries * * *" (Ill. Rev. Stat. 1975, ch. 53, par. 28). Another statutory fee to be assessed by the appellate court is that afforded state's attorneys by section 8 of "An Act concerning fees and salaries * * *" (Ill. Rev. Stat. 1975, ch. 53, par. 8), "[f]or each case of appeal taken from his county * * * to the Supreme or Appellate Court when prosecuted or defended by him, $50."

It is worth noting that section 3 of "An Act to establish appellate courts" (Ill. Rev. Stat. 1975, ch. 37, par. 27) provides that clerks of appellate courts shall perform the duties usually devolving upon clerks of courts in this State.

As heretofore noted, upon affirmance of a conviction on appeal the clerk taxes the costs and fees provided by statute for the appeal and enters judgment therefor. The question then becomes by what means or methods can the appellate court collect and enforce the payment of such fees and costs? As with the circuit court, alternative avenues for collection are available.

Section 9 of "An Act to establish appellate courts" (Ill. Rev. Stat. 1975,

ch. 37, par. 33) contains a broad grant of power to appellate courts in this State which authorizes the collection of costs and fees incurred by reason of appeals to such court. That statute provides:

> "The appellate court shall be vested with all power and authority necessary to carry into complete execution all its judgments, decrees and determinations in all matters within its jurisdiction, according to the rules and principles of the common law and of the law of this state."

Clearly applicable, insofar as it pertains to the collection of costs and fees, this statute is implemented by other statutes and rules of the supreme court.

As noted above, section 13 of division XIV of the Criminal Code of 1874 (Ill. Rev. Stat. 1975, ch. 38, par. 180—3) provides that upon conviction of a person the court shall give judgment that the offender pay the costs. Upon its entry such judgment for costs and fees becomes the same as any other money judgment and may be satisfied in the same manner as any other judgment is satisfied.

Supreme Court Rule 366(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 366(c)) provides in part: "If the reviewing court gives final judgment and issues execution, a certificate or certified copy of the judgment may be filed in the office of the recorder of deeds of any county in which real estate of the defendant in the execution is situated * * * and the judgment shall thereupon have the same force and effect as a lien upon the real estate, as if the judgment had been originally rendered by a court in that county." Supreme Court Rule 366(a)(5) provides that a reviewing court may, upon such terms as it deems just: "* * * grant any relief, including * * * the issuance of execution, that the case may require." Supreme Court Rule 370 provides that process in reviewing courts shall be as near as may be to similar process issued by the circuit court and shall be executed and returned in the same manner as process in the circuit court is executed and returned unless the court orders otherwise.

The judgment lien and execution as in "a court in the county" or "circuit court" as contained in the above-referred Rules is, under our system of jurisprudence, sufficient authority for collection of costs and fees taxed in the appellate court. Not only would the judgment and execution constitute a lien against real estate of a defendant, it would bring within reach any personal or other property of a defendant as in the case of an ordinary civil claim reduced to judgment.

A parallel procedure for collection of costs and fees taxed in criminal cases is afforded by statute. Section 15 of division XIV of the Criminal Code of 1874 (Ill. Rev. Stat. 1975, ch. 38, par. 180—4) provides that a lien for fine and costs shall attach to the real and personal property, not exempt from execution or attachment, for every person who shall be

convicted of any offense, from the time of finding the indictment, or from the day of arrest if there be no indictment. That section further provides that the clerk of the court in which the conviction is had shall upon the expiration of 30 days after judgment is rendered, issue an execution for any fine that remains unpaid, and all costs of conviction remaining unpaid. The officer serving such execution shall levy upon all the real and personal estate of defendant (not exempt from execution) possessed by him on the day of the arrest or finding the indictment, as stated in the execution, and any such property subsequently acquired. The property so levied upon shall be advertised and sold in the same manner as in civil cases, with the like rights to all parties that may be interested therein.

No reason appears why the procedure for obtaining satisfaction of the judgment for costs provided by section 15 of division XIV of the Criminal Code of 1874 should be exclusive of the procedure provided by chapter 77 of the statutes for enforcement of judgments rendered in civil cases. In fact, it would appear that the primary purpose of the provision in the Criminal Code of 1874 is to make clear that the judgments for costs in a criminal case are collectable as money judgments rendered in other cases. The Criminal Code provision for judgment lien and execution is brief and incomplete, no time limitations are stated for the duration of the liens created nor within which executions may be issued and property levied upon and sold. None of the other myriad provisions governing the notice, sale, redemption from sale and execution of deed found in chapter 77 of the statutes are detailed in section 15 of article XIV of the Criminal Code of 1874. Accordingly, this Criminal Code statute can be no more than ancillary to chapter 77 of the statutes which details the enforcement of judgments. Such is further shown by the fact that section 15 of division XIV of the Criminal Code of 1874 expressly provides that, "* * * the property so levied upon *shall be advertised and sold in the same manner as in civil cases, with the like rights to all parties that may be interested therein.*" (Emphasis supplied.)

By the same reasoning the judgment for costs provided by section 13 of. division XIV of the Criminal Code of 1874 should, and does, have the same duration of seven years as money judgments in other cases as provided for in section 1 of "An Act in regard to judgments * * *" (Ill. Rev. Stat. 1975, ch. 77, par. 1). No time limitations are provided by sections 13 or 15 of division XIV of the Criminal Code of 1874 and there is nothing in chapter 77 that indicates that it is limited to the collection of judgments in civil cases. The People of the State of Illinois should not lose their lien for costs or fees taxed in criminal cases any more than a party to a civil case should lose his judgment for costs in any case where such has been awarded him.

Additional recourse for collection of costs and fees is provided from

bail bond deposits made by or on behalf of those accused of crimes. Section 110—7 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 110—7) provides that the person for whom bail has been set shall post the bail with the clerk of the court before which the proceeding is pending. Subsection (e) makes it obvious that the provisions of this section apply to the appellate and supreme courts because it authorizes a court of review to allow, increase, decrease or deny bail in any case before it. Subsection (g) provides that the deposit made in accordance with subsection (a) (a cash deposit of 10% of the amount of the bail) *shall* be applied to the payment of costs. Apparently, though, this provision is limited to instances where an accused does not comply with the terms of his bail bond. However, subsection (h) which follows specifies that after a judgment for a fine and court costs, or either is entered in the prosecution of a cause in which a 10% deposit has been made the 10% deposit shall be applied first to the bail bond costs of 10% of the amount of the deposit and, secondly, to the payment of the judgment for the fine and costs, either or both.

The language of the statute is mandatory and precludes consideration of defendant's ability to pay or hardship on him or his family. Accordingly, to the extent of the amount of cash bail posted, a defendant is presumed not indigent for purposes of paying a fine and costs.

Justification for the statute is somewhat compounded by the fact that oftentimes bail money is advanced on a defendant's behalf by relatives or friends. Nevertheless, justification is present and it has been properly held that the 10% deposit provided by section 110—7(a) is to be applied to payment of the judgment for costs as provided by section 110—7(h) even though the 10% deposit was made on behalf of an accused by a relative or friend; the deposit is presumed to be posted by the accused. (*People v. Lowder* (1974), 21 Ill. App. 3d 985, 316 N.E.2d 159; see Annot., 92 A.L.R.2d 1084 (1963).) By way of further explanation we find pertinent the following excerpt from an article by Teree E. Foster in 6 Loy. L.J. 345, 372-73 (1975):

"Although Illinois courts have not yet resolved this precise issue, opinions of other jurisdictions generally indicate that the legality of the application of cash bail to the satisfaction of fines or costs is a matter governed by statute. Scrutiny of the particular statute involved must therefore precede a determination of whether a generous friend or relative of the accused may be deprived of funds advanced for bail by application of those funds to a judgment for costs. By its terms, the Illinois bail statute indulges in a conclusive presumption that funds deposited in the court in lieu of bail are the property of the defendant by requiring that the accused himself deposit the funds, and by directing in express

terms that such moneys in excess of amounts applied to satisfy a fine or costs be returned to the accused himself. The statute does not contemplate inquiry into the source of the funds received under its terms. So long as a deposit is made in compliance with the statute, the depositor is presumed to be cognizant of the statutory provisions. This construction of the Illinois bail statute effectively dissolves the possibility of assertion of equal protection violations: if the defendant posts bond with "his" money, he is deemed not indigent.

Disturbingly narrow and artificial as this construction of the statute may be, it is difficult to make out a claim that the *accused's* equal protection rights have been infringed when funds donated by friends or relatives are applied in satisfaction of costs. The accused has secured pre-trial release and upon conviction his debt to the state in the form of a judgment for costs is merely transformed into a debt to his benefactor. Certainly the accused may not vindicate the depositor's claim to the funds applied to the judgment for costs by asserting that his own rights have been violated.

Nor can statutory preclusion of inquiry into the source of cash deposited in lieu of bail be attacked as irrational or arbitrary. Although the identity of the owner of the funds deposited could conceivably be ascertained by requiring that such information be stated by affidavit at the time bail bond is executed, the twin prospect of fraudulent attempts to transfer ownership of the funds and subsequent recurring disputes as to whose money was actually deposited may become a disturbing reality. A legislative decision to forestall such administrative difficulties by stifling potential sources of chaos cannot be termed wholly capricious."

Another method for collection of costs and fees taxed in criminal cases is found in the use of fee bills provided for by "An Act in relation to the issuing of fee bills" (Ill. Rev. Stat. 1975, ch. 25, par. 28). That statute provides:

"Any clerk of *any court* in this State may upon proper praecipe filed in his office therefor, issue fee bills for costs at any time within 7 years after the rendition of the judgment or accruing of the right to issue the same; which fee bills shall have the same force and effect as if issued within the year next succeeding the judgment." (Emphasis supplied.)

The 7-year period of time for issuance of fee bills as provided in this statute is co-equal with the 7-year period for enforcement of judgments provided in section 6 of "An Act in regard to judgements * * *" (Ill. Rev. Stat. 1975, ch. 77, par. 6). This adds credence to our holding that the lien

of the judgment created by section 13 of division XIV of the Criminal Code of 1874 is a judgment governed by chapter 77 of the statutes since the legislature presumably would not create disparate periods of time for enforcement for alternative modes of collection of fees and costs.

It should be noted, however, that a fee bill may not be issued where the costs have been reduced to or included in a judgment. Where costs are reduced to judgment, the only mode of collection is by execution issued on the judgment. *Neil v. Blanchard* (1863), 32 Ill. 503; *Eads v. Couse* (1864), 35 Ill. 534.

Issuance of the mandate in a case by the appellate court would not deprive it of jurisdiction to proceed with the collection of the costs and fees due. Whether collection proceeds by the issuance of a fee bill or by enforcement of a judgment, the statutes provide in either case for a 7-year period of limitation on such collection.

The costs and fees collected by the clerk of the appellate court are, pursuant to section 12.1 of "An Act concerning fees and salaries * * *" (Ill. Rev. Stat. 1975, ch. 53, par. 28.1), paid quarterly into the State treasury. One exception to this procedure is in the case of the State's Attorney's fee for taking or following an appeal to the appellate court as fixed in section 8 of "An Act concerning fees and salaries * * *" (Ill. Rev. Stat. 1975, ch. 53, par. 8). That same section provides that State's Attorneys shall have a lien for their fees on all judgments for fines or forfeitures procured by them until such fees are paid in full. In view of this statutory lien accorded to State's Attorneys, the receipt by the clerk of the appellate court of the State's Attorneys' appeal fee when same is paid or collected is constructive only, the actual collection being for and in behalf of the State's Attorneys. Accordingly, the State's Attorney's appeal fee is not payable into the State Treasury but is paid to the State's Attorney, and by him in turn to the county treasurer pursuant to section 3 of "An Act * * * to provide for the collection and disposition of fees * * * paid to the state's attorney * * *" (Ill. Rev. Stat. 1975, ch. 53, par. 18a).

Mention must be made of those defendants who are indigent whose cases are brought to the appellate court on appeal.

Article I, section 14, of the Illinois Constitution of 1970 provides that "* * * [n]o person shall be imprisoned for failure to pay a fine in a criminal case unless he has been afforded adequate time to make payment, in installments if necessary, and has willfully failed to make payment." Although this constitutional provision is applicable to fines only, omitting any reference to costs and fees, it is nevertheless expressive of the approach taken by the cases in determining the liability of indigents for costs and fees. Moreover, *Tate v. Short* (1971), 401 U.S. 395, 28 L. Ed. 2d 130, 91 S. Ct. 668, and *Williams v. Illinois* (1970), 399 U.S. 235, 26 L.

Ed. 2d 586, 90 S. Ct. 2018, from which the *Tate* decision arose, have made it clear that it is not constitutionally permissible to imprison an indigent defendant for nonpayment of a fine. The same rule applies with equal force to cases of nonpayment of costs and fees of prosecution. See *Williams v. Illinois* (1970), 399 U.S. 235, 244 n. 20, 26 L. Ed. 2d 586, 594 n. 20, 90 S. Ct. 2018, 2024 n. 20.

If a defendant is financially unable to pay a fine or the costs of prosecution, no statute presently exists which enables the court to incarcerate him. (Compare with former Ill. Rev. Stat. 1969, ch. 38, par. 1—7(k), and ch. 75, par. 52, both of which have been repealed; see Ill. Rev. Stat. 1975, ch. 38, par. 1008—5—1.) Moreover, whenever it is made satisfactorily to appear to the court that an incarcerated defendant is held in prison for failure to pay a fine or costs of prosecution which he is financially unable to pay, the court has a duty to discharge the defendant from further imprisonment for such fine and costs, and the discharge will amount to a complete release of such fine and costs. Ill. Rev. Stat. 1975, ch. 38, par. 180—6.

However, one wilfully failing or refusing to pay costs may be subjected to punishment for contempt. (See *Tate v. Short* (1971), 401 U.S. 395, 400-01, 28 L. Ed. 2d 130, 134-35, 91 S. Ct. 668, 672.) And, unless the defendant has been released from the costs pursuant to the provisions of section 17 of division XIV of the Criminal Code of 1874 (Ill. Rev. Stat. 1975, ch. 38, par. 180—6), as discussed above, the judgment for costs remains in full force and effect, collectable by execution in the event the defendant loses his indigent status. Ill. Rev. Stat. 1975, ch. 38, par. 180—4; *People v. Davis* (1971), 2 Ill. App. 3d 106, 276 N.E.2d 134.

Finally, we discuss the issue whether the taxing of costs pursuant to sections 13, 15, 16, and 17 of division XIV of the Criminal Code of 1874 (Ill. Rev. Stat. 1975, ch. 38, pars. 180—3 through 180—6) is unconstitutional as applied to indigent defendants. We consider the following two arguments: (1) that the taxing of costs on appeal pursuant to section 13 of division XIV of the Criminal Code of 1874 (Ill. Rev. Stat. 1975, ch. 38, par. 180—3) has a "chilling effect" on an indigent defendant's right to appeal; (2) that a convicted, indigent criminal defendant is discriminated against in that he must be incarcerated before he has an opportunity to prove his indigency as a basis for discharge from incarceration (pursuant to Ill. Rev. Stat. 1975, ch. 38, par. 180—6), while a civil judgment debtor cannot be incarcerated unless non-payment is wilful, and then only for contempt of court.

In *Fuller v. Oregon* (1974), 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116, the Supreme Court in rejecting defendant's attack on an Oregon statute enabling the State to recoup costs of providing counsel for convicted defendants, noted:

> "The fact that an indigent who accepts state-appointed legal

representation knows that he might some day be required to repay the costs of these services in no way affects his eligibility to obtain counsel. The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work 'manifest hardships' are forever exempt from any obligation to repay." 417 U.S. 40, 53, 40 L. Ed. 2d 642, 654, 94 S. Ct. 2116, 2124.

■■ As the indigent defendants correctly note in their brief, the costs which would be taxed upon conviction in the instant cases are less than those which could be subject to recoupment as costs of providing services of counsel on appeal. (See Ill. Rev. Stat. 1975, ch. 38, pars. 208—11 and 121—13.) The Supreme Court's finding that the statute in *Fuller* did not "chill" the exercise of the right to counsel in an impermissible manner clearly encompasses the instant proceedings involving far smaller amounts. The right of appeal of the indigent defendants in this case is not unconstitutionally infringed by the certainty that if their convictions are affirmed on appeal, judgment for costs on appeal will be entered against them. (See *People v. Peters* (1975), 32 Ill. App. 3d 1018, 337 N.E.2d 73.) In the case at bar there is a legitimate governmental interest in recovering the costs of the administration of justice and there is no denial of due process in doing so.

■■ We believe that the second argument above, asserting denial of equal protection, is equally without merit. As already noted, it is well established that a convicted defendant who is fined and assessed costs of prosecution cannot be incarcerated for nonpayment of either the fine or costs unless the nonpayment is determined to be wilfull, wanton or fraudulent, and then the incarceration is for contempt rather than for nonpayment. (See *Williams v. Illinois; Tate v. Short;* Ill. Const. 1970, art. I, §14.) A fine and assessment of costs is in the nature of a civil judgment, and the enforcement of the judgment, as heretofore emphasized, is up to the State. The statutes as applied to the indigent defendants do not deny them equal protection of the laws. Accordingly, we hold sections 13, 15, 16 and 17 of division XIV of the Criminal Code of 1874 (Ill. Rev. Stat. 1975, ch. 38, pars. 180—3 through 180—6) to be constitutional.

Although this proceeding was initiated by the People's motion to assess costs filed concurrently in 28 cases this opinion will be filed in this case alone. Further court orders responsive to the motions in each case will be entered in accordance with the decision herein and as the facts of each case may require.

Motion allowed.

CARTER, P. J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

This court should deny the praecipe for fee bill and demand for certificate of costs because petitioners do not meet the statutory requirements for an allowance of fees. The Statewide Appellate Assistance Service of the Illinois State's Attorneys Association handled the appeals in the cases now before us and subsequently filed petitions requesting an assessment by this court of the appropriate fees under section 8 of "An Act concerning fees and salaries * * *" (Ill. Rev. Stat. 1975, ch. 53, par. 8) against each defendant. These petitions were filed in the names of the state's attorneys of the counties where the initial prosecutions were undertaken. Section 8 provides in pertinent part:

"State's attorneys shall be entitled to the following fees:

* * *

For each case of appeal taken from his county or from the county to which a change of venue is taken to his county to the Supreme or Appellate Court when prosecuted or defended by him, $50."

Under the plain language of this section this court cannot award fees to a state's attorney who did not perform the services for which fees are requested nor can we authorize the Appellate Assistance Service to petition for such fees on behalf of a state's attorney.

At common law successful litigants were not entitled to recover from losing parties the costs and expenses of litigation. Thus, the allowance and recovery of such costs is based solely on statutory provisions. (See *Daily v. Leigh* (1954), 2 Ill. 2d 499, 119 N.E.2d 204; *Ritter v. Ritter* (1943), 381 Ill. 549, 46 N.E.2d 41.) Since statutes which authorize fees and costs are in derogation of the common law and are penal in nature, they must be strictly construed. Thus, the right to an allowance for costs or fees, or to any specific item of costs or fees claimed, must be clearly granted by statute. *Commissioners of Lincoln Park v. Schmidt* (1946), 395 Ill. 316, 69 N.E.2d 869; *Wintersteen v. National Cooperage & Woodenware Co.* (1935), 361 Ill. 95, 197 N.E. 578.

Section 8 provides that a state's attorney is entitled to a $50 fee for prosecuting or defending an appeal taken from his county or from the county to which a change of venue is taken to his county. "Fees" have been defined as the compensation of officers of the court for services rendered. (See *Galpin v. Chicago* (1910), 159 Ill. App. 135, *aff'd* (1911), 249 Ill. 554, 94 N.E. 961.) The right of fees, therefore, arises only upon the actual performance of services. A state's attorney who merely enters an appearance or signs his name to a brief written and argued by the Appellate Assistance Service, but takes no further action, is not entitled to a fee award.

The fees provided for in section 8 of "An Act concerning fees and

salaries * * *" are taxable as costs under section 13 of division XIV of the Criminal Code of 1874 (Ill. Rev. Stat. 1973, ch. 38, par. 180—3), and are recoverable under section 5 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1973, ch. 14, par. 5), only under the circumstances delineated in these provisions. A fee for taking an appeal under section 8 may be assessed only if undertaken by a state's attorney, and that state's attorney has exclusive authorization to recover the fee. There are, however, two narrowly defined circumstances under which the duties of a state's attorney may be performed by another person. Section 6 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1973, ch. 14, par. 6) provides that when a state's attorney has resigned or died, or is otherwise unable to prosecute a cause which it is his duty to prosecute, the court in which the cause is pending may appoint a competent attorney to discharge the duties of the state's attorney in that particular case. In addition, duly authorized assistant state's attorneys may perform the duties of a state's attorney in the same manner and to the same extent that the state's attorney could act. (Ill. Rev. Stat. 1973, ch. 53, par. 18.) It has been held that where the legislature uses the term "State's attorney" in describing the rights and obligations associated with that office it intends that an assistant state's attorney is entitled to the same rights and could perform the same duties. *People v. Nahas* (1973), 9 Ill. App. 3d 570, 292 N.E.2d 466.

Petitioners correctly point out that it has long been held in Illinois that state's attorneys may be assisted in criminal prosecutions by other counsel and still be entitled to statutory fees. (See *e.g., People v. Ford* (1960), 19 Ill. 2d 466, 168 N.E.2d 33; *People v. Farnsley* (1973), 53 Ill. 2d 537, 293 N.E.2d 600.) It has never been held, however, that private counsel who assist a state's attorney in a criminal prosecution are authorized to petition for the recovery of statutory fees in behalf of that state's attorney. Moreover, it is clear that the cited cases do not support the proposition that a state's attorney is entitled to the $50 statutory fee for a criminal appeal in cases where the Appellate Assistance Service has handled the appeal. In the cases where a trial court has been upheld in allowing a state's attorney to be assisted by private counsel, the state's attorney has performed a substantial portion of the tasks associated with the prosecution and has therefore been entitled to fees under section 8 of "An Act concerning fees and salaries * * *" (Ill. Rev. Stat. 1975, ch. 53, par. 8). In appeals undertaken by the Appellate Assistance Service, however, the state's attorney serves as little more than pro forma cocounsel. Under these circumstances it cannot be said that the state's attorney has met the requirement of section 8 that he personally prosecute or defend the appeal.

It is argued that when the Appellate Assistance Service attorneys

undertake an appeal at the request of a state's attorney, they are in effect serving as assistant state's attorneys and are therefore authorized to recover a fee award pursuant to section 8 of "An Act concerning fees and salaries" and section 5 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1975, ch. 14, par. 5). In view of the fact that an assistant state's attorney is authorized to perform the duties of an elected official, the legislature has delineated a number of requirements designed to make assistant state's attorneys publicly accountable. Under section 2 of "An Act * * * to provide for the collection and disposition of fees * * *paid to the state's attorney * * *" (Ill. Rev. Stat. 1973, ch. 53, par. 18), the office of assistant State's attorney must be created by the county board of supervisors, the assistant must be appointed and work under the supervision of the state's attorney and each assistant must take an oath of office. The Appellate Assistance Service does operate with the approval of the county board of supervisors and state's attorney of the counties from which it takes appeals. It also operates under the apparent supervision of the state's attorneys responsible for the prosecution of cases appealed by the Service. Appellate Assistance Service attorneys do not, however, take an oath of office. Petitioners conveniently disregard the significance of this last requirement and conclude that Appellate Assistance Service attorneys, not having taken an oath of office, are simply "de facto" assistant state's attorneys. This implication of statutory authority that would allow Service attorneys to petition for fees does not comport with the firmly established principle that statutory allowances for costs and fees are to be strictly construed. A court cannot by inference or implication assume the power to impose costs. (*People v. Fox* (1972), 7 Ill. App. 3d 707, 288 N.E.2d 500.) To do so would be a clear abuse of discretion. See *Wintersteen v. National Cooperage & Woodenware Co.* (1935), 361 Ill. 95, 197 N.E. 578; *Adams v. Silfen* (1951), 342 Ill. App. 415, 96 N.E.2d 628.

The allowance and recovery of costs rests entirely upon explicit statutory provision and no liability for costs can exist in the absence of clear statutory authorization. Since petitioners have failed to show sufficient compliance with the terms of the authorizing statutes in question the praecipe for fee bill and demand for certificate of costs should be denied.

Although not specifically at issue on appeal, this case raises serious questions regarding the authority of the Appellate Assistance Service which merit brief comment here. As was noted earlier in this dissent, it is well established in Illinois that state's attorneys may be assisted in criminal prosecutions by private counsel. The services performed by the Appellate Assistance Service, however, go far beyond mere assistance. The primary purpose of the Service is to provide participating state's attorneys' offices

with a centrally coordinated appellate office. Implicit in this purpose is the objective of eventually taking over responsibility for all the appeals now handled by state's attorneys. I note that the total cost per brief during the first 13 months of the Statewide Appellate Assistance Service was approximately $1250. While ostensibly under the supervision of individual state's attorneys, both the present and anticipated scope of operation of the Appellate Assistance Service indicate that it is and will increasingly become a centralized and relatively independent appellate office. This would seem to be a clear usurpation of a state's attorney's duties as prescribed in section 5 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1973, ch. 14, par. 5).

State's attorney is an elective office and the legislature, in providing for the appointive position of assistant state's attorney, has been very careful to insure that assistant state's attorneys are publicly accountable for actions they take in discharging the duties of the state's attorney's office. It is the duty of a state's attorney to intelligently weigh the chances of the successful termination of a particular prosecution and appeal, having in mind the interests of the county he serves. The state's attorney is held accountable to the people of the county he serves through the ballot box and the assistant state's attorney through his oath of office and close supervision by the state's attorney. The Appellate Assistance Service, on the other hand, is largely independent and unaccountable. Moreover, as the organization continues to grow and to assume a greater share of the workload and duties now performed by state's attorneys, the public will gradually lose a large measure of influence over this very important aspect of the judicial process. This development runs contrary to the Illinois Constitution and the intent of the General Assembly in prescribing the duties and obligations of state's attorneys and in my opinion merits a close examination by our court of the Appellate Assistance Service's participation in the appeals process.